UNITED STATES, Appellee

v.

Napolean BAILEY, Master Sergeant
U. S. Air Force, Appellant

No. 00-0306

Crim. App. No. 32898

United States Court of Appeals for the Armed Forces

Argued January 9, 2001

Decided May 22, 2001

CRAWFORD, C.J., delivered the opinion of the Court, in
which SULLIVAN, GIERKE, EFFRON, and BAKER, JJ., joined.

<u>Counsel</u>

For Appellant:  <u>Frank J. Spinner</u> (argued); <u>Colonel James R.
Wise</u>, <u>Lieutenant Colonel Timothy W. Murphy</u>, and <u>Captain
Patrick J. Dolan</u> (on brief); <u>Captain Bryan A. Bonner</u>.

For Appellee:  <u>Captain Christopher A. Santoro</u> (argued);
<u>Colonel Anthony P. Dattilo</u>, <u>Major Lance B. Sigmon</u>, and
<u>Captain Christa S. Cothrel</u> (on brief); <u>Major Jennifer R.
Rider</u>.

Military Judge:  Willard L. Pope

<u>**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION**</u>.

United States v. Bailey, No. 00-0306/AF

Chief Judge CRAWFORD delivered the opinion of the Court.

Appellant was convicted at a general court-martial of rape, forcible sodomy (2 specifications), aggravated assault, assault and battery (3 specifications), making a false official statement, kidnapping, communicating threats (2 specifications), obstructing justice (2 specifications), disorderly conduct, and unlawful entry, in violation of Articles 120, 125, 128, 107, and 134, Uniform Code of Military Justice, 10 USC §§ 920, 925, 928, 907, and 934, respectively. The officer and enlisted members of the court sentenced him to a dishonorable discharge, confinement for 30 years, total forfeitures, reduction to airman basic, and a reprimand. The convening authority approved that sentence. On December 16, 1999, the Court of Criminal Appeals rejected appellant's seven assignments of error and affirmed the convictions and the sentence. 52 MJ 786. On August 17, 2000, we granted review of the following issues:

> I. WHETHER MILITARY RULE OF EVIDENCE 413 IS CONSTITUTIONAL ON ITS FACE AND/OR AS APPLIED IN THIS CASE, IN THAT APPELLANT WAS DENIED DUE PROCESS OF LAW.

> II. WHETHER MILITARY RULE OF EVIDENCE 413 IS CONSTITUTIONAL AS APPLIED IN THIS CASE, IN THAT APPELLANT WAS DENIED EQUAL PROTECTION OF THE LAW.

    III.  WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION UNDER MILITARY RULE OF EVIDENCE 403 WHEN HE HELD EVIDENCE ADMISSIBLE UNDER MILITARY RULE OF EVIDENCE 413.

As to Issues I and II, we hold adversely to the claims of appellant based on our decision in United States v. Wright, 53 MJ 476, decided on August 31, 2000.

Thus, we will only address Issue III:  we hold that the judge did not abuse his discretion in admitting the evidence.

FACTS

Among other offenses, appellant was charged with raping F on December 4, 1995, and committing forcible sodomy with F between March 1 and June 1, 1996.  Appellant was acquitted of the rape charge but convicted of the sodomy charge.  He was also convicted of raping and forcibly sodomizing J on September 5, 1996.

The Government used evidence that appellant forcibly anally sodomized W (who was married to appellant from November 1984 until 1990 -- but separated from him in March 1988), and also forcibly anally sodomized E in 1991 or 1992 as propensity evidence that he forcibly anally sodomized F and J.  In order to counter the testimony of W and E, defense counsel called K, who testified that she and appellant maintained a consensual sexual relationship

without any physical, emotional, or sexual abuse toward her within the same period of time that the charges for which appellant was tried and convicted arose. Appellant did not testify at trial, although an exculpatory statement that he made to civilian police was admitted into evidence.

The Government's theory of the case was that appellant engaged in a number of relationships with various victims. These relationships began with appellant establishing a friendly relationship with the victim. As the relationship progressed, appellant would exercise greater degrees of control and power over these women. Appellant gained control by alienating them from their family and friends, asking them to do certain things regarding their appearance, and watching and controlling their movement (almost to the point of stalking them). Appellant's mode of control then progressed to the use of threatening language and behavior. He used weapons when making his threats. Eventually the threatening behavior turned into actual physical assaults which involved slapping, punching, hitting, and throwing his victims against walls and other objects. Finally, it culminated with forcible rape and sodomy. In short, the Government's theory was that appellant groomed the women in his life to accept physically and sexually abusive conduct.

4

The defense theory of the case was that all the "victims" were mature women and, while some of the conduct between appellant and these women could be considered rough, everything was either consensual or didn't happen.

Prior to trial, defense counsel asked the judge to declare Mil.R.Evid. 413, Manual for Courts-Martial, United States (2000 ed.), unconstitutional; and if he found it to be constitutional, to preclude the testimony of W and E after performing the Mil.R.Evid. 403 balancing test.  Based on proffers from both counsel as to what various witnesses would say, the military judge ruled that W and E could testify concerning the prior acts of forcible sodomy committed upon them by appellant.

After trial counsel presented 27 witnesses related to the offenses with which appellant was charged, defense counsel asked the military judge to reconsider his ruling regarding admissibility of testimony from W and E.  The military judge again announced that he had done the Mil.R.Evid. 403 balancing test and determined that the probative value of the testimony outweighed its prejudicial effect.

W testified that she met appellant in 1981 when she was 21 and he was 25.  They married in November 1984. Shortly after their first year of marriage, there was a

5

physical altercation over the lack of salad dressing for dinner. Appellant became angry and hit his wife across the face, breaking her glasses and bruising her eye. After this incident, the physical abuse escalated and included grabbing her throat, pushing her up against a wall, pinning her on the floor, punching her, and one instance of kicking her. W testified that in their third year of marriage, there was one instance of forced anal sex. W testified that she had had consensual anal intercourse with the accused only one time before the forcible incident and that had occurred when she "first visited him" at McChord Air Force Base, Washington. W left appellant in March 1988, divorced him in 1990, and had no further communication with him. Trial defense counsel did not cross-examine W. Throughout her brief testimony, the judge sustained defense objections and narrowed her testimony considerably.

E testified that she met appellant in 1991 or 92 through her work. Her job was delivery driver for a local company restocking vending machines in a secure area at Fairchild AFB, Washington. In order to get into the secure area, she had to be escorted, and her escort was appellant. E testified that when they first began their relationship, appellant was "charming," but he later became "controlling and manipulative." She and appellant developed a sexual

6

relationship within 1 or 2 months after their meeting.
During this sexual relationship, they had anal intercourse
two or three times.  E did not consent to any of this.  She
told appellant not to have anal sexual intercourse with her
but he ignored her and did it anyway.

During cross-examination, E testified that her
relationship with appellant lasted maybe 6 months.  E
acknowledged that the incidents involving anal sex with
appellant occurred "in the middle of [their] relationship."
E had consensual sex with appellant both prior to and
subsequent to that nonconsensual anal intercourse.

To counter the testimony of W and E, the defense
presented K.  She testified that she met appellant in the
spring of 1995, continued their friendship through the
summer, and began an intimate relationship with him in late
fall or early winter of 1995.  K left the Spokane,
Washington, area in July 1996 because of a job transfer to
Denver, Colorado.  She said that, during her relationship
with appellant, there was no physical, emotional, or sexual
abuse.  He never forced her to do anything sexual or
otherwise against her will.

## Discussion

Issue III asks whether the military judge abused his
discretion.  This Court has held that for evidence to be

admitted, it must be both logically (Mil.R.Evid. 401 and 402) and legally (Mil.R.Evid. 403) relevant at trial. See, e.g., United States v. Griffin, 50 MJ 278, 283 (1999); United States v. Simmons, 48 MJ 193, 196 (1998). Thus, while the evidence may be logically relevant, it may be excluded under Mil.R.Evid. 403 as not being legally relevant. Drafters' Analysis of Mil.R.Evid. 401, 402, 403, Manual, supra at A22-33 to A22-34. In Wright, 53 MJ at 482, this Court set out non-exclusive factors to be included in any balancing test. Although the military judge in this case did not have the benefit of the Wright opinion, he did apply the following factors:

> [P]roximity...; its similarity to the charged
> event; the rate of frequency of the other acts;
> ... surrounding circumstances; ... relevant
> intervening events; and ... other relevant
> similarities or differences.

Applying the Wright factors (plus two), we hold that they are supported by the record as stated below and substantiate the judge's Mil.R.Evid. 403 determination:

> (1) Temporal proximity. The events involving E
> occurred about 3 1/2 years before the charged
> offenses; the anal sodomization of his wife occurred
> about a decade before the first offense with which
> appellant was charged occurred;

(2) Similarity to the event charged. Appellant's modus operandi was to charm women, groom them to be his "servants," and then force them to have anal sex.

(3) Frequency of the acts. Anal intercourse occurred infrequently with each victim, but the similarity of events and grooming of his women prior to the sodomy was remarkably similar.

(4) The presence or lack of intervening circumstances. There were none.

(5) The relationship between the parties. The relationship between appellant and the women, as far as the forcible sodomy goes, was exactly alike. In only one instance was there a difference; he forced his wife as opposed to his girlfriend to engage in anal sodomy.

(6) Strength of proof of the act. Appellant did not contest that the sodomy occurred. Even though he did not testify, the defense theory was that any sexual acts that occurred between appellant and the victims were purely consensual.

(7) Time needed for proof of the prior act. A minimum amount of time was needed. The military judge kept the witness' testimony abbreviated and focused.

To ensure the evidence was properly considered by the court members, the military judge gave limiting instructions to the court members which ensured that they understood the very limited reasons for which he had admitted the testimony of W and E.

(8) Distraction to the factfinder. We conclude that it is unlikely that the evidence would result in a distracting mini-trial on a collateral issue.

(9) Potential for less prejudicial evidence. There was no less prejudicial evidence concerning the act of anal intercourse that could have been presented in this case.

(10) Probative weight of the evidence. Probative weight was extremely high. The evidence showed a clear factual pattern that appellant forced women to engage in physically and sexually abusive conduct.

Based on the balancing test applied by the judge and the limiting instructions, we hold that the judge did not abuse his discretion in admitting the evidence under Mil.R.Evid. 403 and 413. We review a military judge's evidentiary rulings for an abuse of discretion. However, when the judge does not articulate the balancing analysis on the record, we give the evidentiary ruling less deference than we do where, as in this

United States v. Bailey, No. 00-0306/AF

case, the balancing analysis is fully articulated on the record.  United States v. Manns, 54 MJ 164, 166 (2000).

The decision of the United States Air Force Court of Criminal Appeals is affirmed.