## UNITED STATES

v.

### Staff Sergeant Michael D.A. RANGEL, United States Air Force.

#### ACM 36382.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 10 March 2005.

2 March 2007.

Appellate Counsel for Appellant: Colonel Nikki A. Hall, Lieutenant Colonel Mark R. Strickland, and Captain Kimberly A. Quedensley.

Appellate Counsel for the United States: Colonel Gerald R. Bruce, Colonel Gary F. Spencer, Lieutenant Colonel Robert V. Combs, Major Michelle M. McCluer, and Major Kimani R. Eason.

Before BROWN, FRANCIS, and SOYBEL, Appellate Military Judges.

## OPINION OF THE COURT

FRANCIS, Judge:

A general court-martial composed of officer members convicted the appellant, contrary to his pleas, of one specification of forcible sodomy on divers occasions, in violation of Article 125, UCMJ, 10 U.S.C. §§ 925. The panel sentenced the appellant to a dishonorable discharge, 35 years confinement, forfeiture of all pay and allowances, and reduction to E–1. The convening authority approved the sentence as adjudged.

The appellant raises three allegations of error. He asserts: 1) the military judge erred in admitting evidence under Mil. R. Evid. 413 that the appellant committed other sexual assault offenses; 2) the evidence is legally and factually insufficient to support his conviction[1]; and 3) his sentence is inappropriately severe.

### Background

The appellant was convicted of forcibly sodomizing JB on divers occasions between 1 October 2000 and 31 October 2003. JB was the teenage son of Ms. SB, a divorcee the appellant befriended in 1996 when he was stationed at Moron Air Base, Spain. When the appellant was re-assigned to the United States in 1997, he suggested that Ms. SB move her family to the United States so she could provide a better life for her three children. She agreed and the appellant sponsored their entry into the country.

At the time of the charged offenses, Ms. SB, her son JB, and her daughter KB lived with the appellant in Altus, Oklahoma. JB and KB moved with the appellant to Altus in October 2000. Ms. SB joined the appellant and her family in Altus after her oldest son, RB, died in November 2000.[2]

JB testified that shortly after his brother's death, the appellant began forcibly sodomizing him. At the time the offenses started, JB, then 15 years old, was sharing a bedroom with the appellant, with JB sleeping on the floor. One night, the appellant asked JB if he wanted to sleep in the appellant's bed instead of on the floor. JB agreed. He fell asleep in the bed and awoke to find the appellant pulling down JB's underwear and trying to penetrate JB's anus with the appellant's penis. JB did not say anything, but moved around to make the appellant stop. The appellant stopped, hugged JB, and promised never to do anything like that again. The next night, JB again agreed to sleep in the appellant's bed because he believed the appellant's promise not to do anything. JB awoke to find the appellant on top of him trying to penetrate him again. Again JB moved around and the appellant stopped, hugging JB, and promising not to do it again.

JB testified the appellant did not stop, but tried again about a week later, this time successfully. On that occasion, the appellant pulled the bed sheet up over JB's head. He then pinned down one of JB's legs, held JB's other leg up toward his shoulder with one hand, and used his other hand to guide his

---

**1.** This assignment of error is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

**2.** When the appellant first returned to the United States from Spain, he was assigned to Offutt Air Force Base, Nebraska. Ms. SB moved her fami-

ly to the same area. When the appellant was thereafter transferred to Altus Air Force Base, Oklahoma, Ms. SB opted to follow. Ms. SB initially stayed behind in the Offutt area to let her oldest son, RB, finish high school. Soon thereafter, RB died unexpectedly of severe asthma.

penis into JB's anus, keeping it there until the appellant ejaculated. JB struggled, but was unable to get the appellant off him. The appellant used so much force on that occasion to hold JB down that it hurt and JB could not move. JB testified the appellant thereafter continued to sodomize him four or five times per week for two and one-half to three years, both through forced anal penetration and by placing his mouth on JB's penis.

The military judge, over trial defense counsel's objection, also admitted evidence, under Mil. R. Evid. 413, that the appellant previously forcibly sodomized two other individuals. FS testified that in 1988 or 1989, when he was between 10–12 years old, and the appellant was 17 or 18 years old, the appellant sodomized him multiple times. The two were playmates and FS sometimes stayed at the appellant's house. On several occasions when he did so, the appellant, when he thought FS was sleeping, forcibly inserted his penis into FS' anus. FS told him to stop, but the appellant would not.

The appellant's nephew, JK, testified the appellant sodomized him twice, both times when he was visiting his grandparents, the appellant's parents. The first time was in the summer of 1989 when JK was about 6 years old and the appellant was 19 or 20 years old. JK woke up one night to find the appellant had JK's penis in his mouth. The second time occurred five years later in 1994, when JK was about 10–11 years old and the appellant was 24 or 25 years old. On that occasion, JK fell asleep on the couch. JK awoke briefly while being carried to his room by the appellant, but fell asleep again. He woke to find the appellant with his mouth on JK's penis. The same night, the appellant inserted his penis into JK's anus.

### Military Rule of Evidence 413

"We review the military judge's ruling on the admissibility of evidence under an abuse of discretion standard." *United States v. Dewrell,* 55 M.J. 131, 137 (C.A.A.F.2001). *See also United States v. Bailey,* 55 M.J. 38 (C.A.A.F.2001); *United States v. Bare,* 63 M.J. 707, 710 (A.F.Ct.Crim.App.2006). "[W]hen the judge does not articulate the balancing analysis on the record, we give the evidentiary ruling less deference than we do where ... the balancing analysis is fully articulated on the record." *Bailey,* 55 M.J. at 41. "If the military judge makes findings of fact, we review the findings under a clearly erroneous standard of review. We review conclusions of law de novo." *Bare,* 63 M.J. at 710 (quoting *United States v. Springer,* 58 M.J. 164, 167 (C.A.A.F.2003)).

■ In sexual assault cases, evidence of uncharged past sexual assaults by the same accused "is admissible and may be considered for its bearing on any matter to which it is relevant." Mil. R. Evid. 413(a). This includes admission for purposes of demonstrating the accused's propensity to commit the charged offenses. *United States v. Parker,* 59 M.J. 195, 198 (C.A.A.F.2003); *United States v. Wright,* 53 M.J. 476, 480 (C.A.A.F. 2000).

■ Before admitting evidence under Mil. R. Evid. 413, the judge must make three threshold determinations: 1) Whether the accused is charged with an offense of sexual assault within the meaning of Mil. R. Evid. 413(a); 2) Whether the proffered evidence is evidence that the accused committed another offense of sexual assault; and, 3) Whether the proffered evidence is relevant under Mil. R. Evid. 401 and 402. *United States v. Berry,* 61 M.J. 91, 95 (C.A.A.F.2005) (citing *Wright,* 53 M.J. at 482). If the evidence meets these threshold requirements, the military judge must then apply the balancing test of Mil. R. Evid. 403 to determine whether its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members." *Id.* "In conducting the [Mil. R. Evid.] 403 balancing test a military judge should consider the following factors: the strength of the proof of the prior act; the probative weight of the evidence; the potential to present less prejudicial evidence; the possible distraction of the fact-finder; the time needed to prove the prior conduct; the temporal proximity of the prior event; the frequency of the acts; the presence of any intervening circumstances; and the relationship between the parties." *Id.; Bailey,* 55 M.J. at 41.

The military judge included in the record a written ruling explaining the basis for her decision that evidence of the appellant's prior sexual assaults on FS and JK was admissible under Mil. R. Evid. 413. Although the ruling is relatively short, it indicates the military judge performed the balancing test required by Mil. R. Evid. 403, using the factors enunciated in *Wright* and its progeny. The military judge's ruling also specifically adopted the more extensive rationale for admission offered by the government in its response to the defense motion to suppress the proffered evidence. Accordingly, we review both documents to discern the basis for the military judge's ruling. Having done so, and considering the evidence of record, we conclude the military judge did not abuse her discretion in admitting evidence that the appellant previously sexually assaulted FS and JK.

The proffered evidence readily passes the threshold determinations needed for consideration under Mil. R. Evid. 413. The appellant was charged with forcible sodomy, a sexual assault within the meaning of Mil. R. Evid. 413. Further, the sexual assaults described by FS and JK are the same as those at issue in this case, including both non-consensual fellatio and forced anal penetration. Given the similarity of offenses, their testimony meets the relevancy tests of Mil. R. Evid. 401 and 402, as it shows the propensity of the appellant to commit the charged offenses. *Berry*, 61 M.J. at 95.

█ Turning to the *Wright* factors, we find the testimony of FS and JK provided strong evidence that the appellant previously sexually assaulted them in a manner very similar to the charged assaults against JB. Their testimony was supported in part by that of JK's mother, Ms. TK, who testified that when she questioned the appellant about placing his mouth on JK's penis, he admitted inappropriately "touching" JK. Evidence of these past sexual assaults was highly probative. Like the charged offenses, they both involved forced anal penetration, and, in the case of JK and JB, non-consensual fellatio. The manner in which the appellant assaulted FS and JK was also similar to that described by JB. All three individuals testified the appellant initially attacked them when he

thought they were asleep. The appellant's relationship to all three individuals was also similar. None of the victims were strangers. Rather, the appellant, at the time of the assaults, was in a position of trust in each of the victim's lives, either as a close personal friend, uncle, or father figure, and all were considerably younger than the appellant. Given these strong similarities, there was no less prejudicial evidence that could have been presented in this case as a reasonable alternative.

Evidence of the appellant's prior sexual assaults on FS and JK did not result in a distracting mini-trial for the fact-finder and did not require an inappropriate amount of time. The testimony of FS, JK, and Ms. TK was short, succinct, and credible. Contrary to the appellant's suggestion, we also find that the government counsel's references to the prior assaults, both in his opening statement and closing argument, were not inappropriate. Taken in context, government counsel's primary focus was clearly on the charged offenses against JB. References to the prior sexual assaults on FS and JK were used to show the appellant's propensity to engage in such acts and to show the appellant's use of a similar approach in committing the same offenses against all three individuals, countering trial defense counsel's theory that JB's version of the assaults was simply unbelievable. That is exactly the kind of use contemplated by Mil. R. Evid. 413 and neither distracted the fact-finder from the charged offenses nor resulted in unfair prejudice to the appellant. *See Bare*, 63 M.J. at 712 (addressing the purpose of similar propensity evidence admitted under Mil. R. Evid. 414). We know of no rule precluding counsel for either side from fairly commenting on evidence properly admitted at trial, whether under Mil. R. Evid. 413 or any other established evidentiary rule. We also note that the military judge issued an appropriate limiting instruction to the members to ensure they understood the limited purpose for which evidence of the appellant's prior sexual assaults could be considered. *Bailey*, 55 M.J. at 41.

Neither the age of the appellant's prior sexual assaults nor the frequency with which

they occurred diminished the probative value of FS' and JK's testimony or unfairly prejudiced the appellant. To the contrary, the frequency of the appellant's prior assaults, committed over a span of several years of his life, increases the probative value of the contested evidence. The record does not reflect any intervening circumstances between the appellant's prior assaults on FS or JK and the charged assaults on JB that would warrant excluding evidence of the prior offenses.

FS testified the appellant sexually assaulted him in 1988 or 1989, and that he believed the appellant at that time was probably 17 or 18 years old. Relying on our superior court's holding in *Berry*, the appellant argues he was "hardly an adult" at the time of the alleged assault on FS and therefore could not have had the same mens rea he would have had as an adult at the time of the later alleged assaults on JB between 2000 and 2003. The appellant asserts this differing mens rea constitutes an intervening circumstance that should have led the judge to exclude FS' testimony. We do not agree.

*Berry* addressed the conviction of an adult soldier for forcible sodomy of another adult soldier. Relying on Mil. R. Evid. 413, the trial judge admitted evidence that the accused, when he was 13 years old, engaged in fellatio with a six-year-old boy, where no force was used and both boys were willing participants. The Court of Appeals for the Armed Forces overturned the conviction, holding that the evidence of the prior sexual acts was more prejudicial than probative and therefore should have been excluded. The Court reasoned that the accused's growth from childhood to adulthood constituted a "notable intervening circumstance" between the two events and there was no evidence that the mens rea of the accused as a young teenager at the time of the first incident was the same as when he allegedly committed the charged offense as a 21–year-old. *Berry*, 61 M.J. at 97.

The facts of the case sub judice are significantly different. The appellant's date of birth is reflected in the record as 5 May 1969. Depending on when in 1988 the assaults on FS occurred, the appellant would have been at least 18 years old, and no longer a minor. That is a far cry from the actions of the 13–year-old addressed in Berry. Further, unlike the isolated "consensual" conduct addressed in Berry, FS testified the appellant forcibly sodomized him on multiple occasions. Both the appellant's age and his repeated assaults on FS indicate his assaults were not the result of sexual experimentation by a young adolescent, but the deliberate actions of an adult exercising sexual control over a young boy. That conclusion is reinforced by the appellant's non-consensual fellatio on JK in the summer of 1989, when the appellant would have been 20 years old, and his forcible sodomy of JK again in 1994, when he was 24 or 25 years old. That course of conduct, taken as a whole, is highly probative where the appellant is charged with the same type of sexual assaults between 2000 and 2003, when he was between 31 and 34 years old.

The appellant also asserts that the differing ages of FS, JK, and JB at the time of his alleged offenses negates the probative value of the prior assaults. We find no merit in this argument. FS testified he was 10–12 years old when the appellant forcibly sodomized him. JK testified he was about 6 years old when the appellant first assaulted him and 10–11 years old when the appellant assaulted him the second time. JB was born 2 May 1985. He testified the appellant assaulted him over a two and a half to three year period, starting shortly after his brother died in November 2000, and ending in 2003, when he was 17 years old. Thus, JB would have been 15 years old at the time the assaults began.

The appellant argues that because FS and JK were younger when the appellant assaulted them, those assaults are not probative of his alleged assaults on JB at ages 15–17. We do not agree. Although JK was only about 6 years old when the appellant first assaulted him, he was 10–11 years old when the appellant assaulted him the second time, engaging in forced anal penetration. Similarly, FS was 10–12 years old when the appellant forcibly sodomized him. The assaults of both boys include the same type of offenses JB reported the appellant performed against him, starting when JB was 15 years old. We

find little meaningful distinction between these ages, particularly in light of the military judge's finding, as part of her ruling, that JB physically appeared to be several years younger than his age. Having not been able to ourselves observe the witnesses, we defer to the judge's finding on that point. Indeed, we note that JB testified he weighed only about 100–105 pounds when the assaults began and that trial defense counsel, in his findings argument, acknowledged that JB "presents a fairly small stature". More significantly, however, the similarities in the victims, and the way in which the assaults were conducted, far outweigh any distinction that might be drawn from the minor differences in the victims' ages. All of the boys were considerably younger than the appellant and all were initially assaulted when the appellant thought they were asleep. Further, the appellant had a close personal relationship with all three boys. He was FS' friend, JK's uncle, and "dad" to JB. These similarities increase the probative value of the prior assaults.

In view of the above, and the limiting instruction given to the members on how to use the evidence, we hold the military judge did not abuse her discretion in admitting testimony concerning the appellant's prior sexual assaults on FS and JK.

### Legal and Factual Sufficiency

■ We review the appellant's claim of legal and factual insufficiency de novo, examining all the evidence properly admitted at trial. *See* Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington,* 57 M.J. 394, 399 (C.A.A.F.2002). The test for legal sufficiency is whether, considering the evidence in the light most favorable to the government, any rational trier of fact could have found all the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Quintanilla,* 56 M.J. 37, 82 (C.A.A.F.2001); *United States v. Turner,* 25 M.J. 324 (C.M.A. 1987). The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we ourselves are convinced of the appellant's

guilt beyond a reasonable doubt. *Turner,* 25 M.J. at 325. Both standards are met here.

Within the context of this case, the elements of the offense of forcible sodomy under Article 125, UCMJ, are: 1) that the accused, on divers occasions between 1 October 2000 and 31 October 2003, engaged in unnatural carnal copulation with JB; and 2) that the acts were done by force and without JB's consent. *Manual for Courts–Martial, United States (MCM),* Part IV, ¶ 51(b) (2005 ed.). Unnatural carnal copulation includes, inter alia, placing a person's mouth on the sex organ of another person and placing a person's sex organ in the anus of another person. *MCM,* Part IV, ¶ 51(c).

Ms. SB and JB testified that JB and his sister moved to Altus, Oklahoma with the appellant in October 2000. JB testified that sometime after they moved to Altus, and after his brother died in November 2000, the appellant began sexually assaulting him and continued to do so until October 2003, when JB reported the appellant's conduct to criminal investigators. Specifically, JB testified the appellant placed his mouth on JB's penis and inserted his penis into JB's anus. Such actions fall squarely within the definition of unnatural carnal copulation under Article 125, UCMJ, and constitute sodomy within the meaning of that article. JB testified the appellant sodomized him four to five times per week for two and one-half to three years.

JB's testimony that the appellant sodomized him was supported in part by the propensity evidence admitted under Mil. R. Evid. 413. Both FS and JK testified the appellant sexually assaulted them in ways very similar to that described by JB. The nature and similarity of the prior sexual assaults lent credibility to JB's testimony as to how the appellant sodomized him.

JB's testimony was also supported by evidence of the appellant's own behavior after it became apparent his offenses had been discovered. The day she reported the appellant to the Air Force Office of Special Investigations, Ms. SB removed her children from school early and took them to the home of a friend, Ms. M, for safety. Ms. M testified that shortly thereafter, the appellant showed up at her house, extremely agitated, demand-

ing to know "where are my kids" and "what's going on". In an attempt to downplay the unfolding events, Ms. M and Ms. SB told the appellant everything was fine and let him into the house to see the kids. Once inside, the appellant ignored KB, went directly to JB and said "we need to talk, you need to come here, we need to talk". At that point, Ms. M viewed the appellant's behavior as irrational and ordered him from the house. When he left, the appellant, still extremely agitated, sat in his car and beat his head on the steering wheel. A reasonable trier of fact could infer from the appellant's behavior that he realized his offenses had been discovered and was attempting to exercise his dominance over JB to cover his tracks.

The government also presented evidence that the appellant's sexual assaults on JB were done by force and without JB's consent. As in rape cases, the force needed for the offense of forcible sodomy can be either actual force or constructive force. *United States v. Davis*, 52 M.J. 201, 203 (C.A.A.F.1999). In addressing the issue of constructive force, our superior court has long recognized that parents or others acting in loco parentis, whom a child is accustomed to obey, "can exert a 'moral, psychological or intellectual force' over a child, which is the compulsory equivalent of a threat or intimidation." *United States v. Palmer*, 33 M.J. 7, 9 (C.M.A. 1991); *United States v. Torres*, 27 M.J. 867, 869 (A.F.C.M.R.1989).

Evidence of both actual force and constructive force was presented at trial. JB testified that the first time the appellant sodomized him, he struggled, but it did no good. The following exchange between the prosecutor and JB during JB's direct examination is instructive:

Q: Did you struggle?

A: Yes, sir.

Q: Were you able to get him off of you?

A: No, sir.

Q: And, why not?

A: Cause [sic], he was using force; he was holding me [sic] leg down, and it hurt, I couldn't move.

. . . .

Q: How much did you weigh then, [JB]?

A: Around a hundred, a hundred and five pounds.

Thereafter, JB was sometimes able to successfully reject the appellant's advances, but suffered physical or verbal abuse when he did so. The following is illustrative:

Q: Was there ever a time when [the appellant] stepped on you?

A: Yes, sir.

Q: Please tell us a little bit about when that would happen?

A: When I would usually put like a little force into, you know, trying to stop him from molesting me; the next day he would wake up, usually getting ready for work and just kick me, or step on me.

Q: Why do you think he did that?

A: Because, I wouldn't let him. . . .

. . . .

Q: Do you remember if he ever tried to kiss you?

A: Yes, sir.

Q: And, what do you remember about that?

A: I remember he used to tell me, or try to kiss me, and, I would pull my face over, and he would tell me, "I'm already fucking your ass, so, why can't I kiss you?"

Throughout his testimony, JB indicated he rarely told the appellant "no" or "stop" and never told his mother what the appellant was doing. When asked why he did not tell his mother about the abuse, JB testified he was afraid of the appellant and wanted to keep peace in the family. Ms. SB and JB testified the appellant exercised disciplinary authority over JB and that JB referred to the appellant as "dad". JB noticed that when he resisted the appellant's advances, the appellant would treat him badly and would get into fights with JB's mom and sister. Conversely, when the appellant successfully penetrated JB, "[h]e would always be nicer; he would want to go to places, take my mom, my sister and I places we wanted to go to." JB also testified the appellant told him that if JB ever told anyone what was going on, the appellant "would lose his job" and that it was JB's "fault", as he "was the one who started it." JB also testified he was afraid for his

mother and sister, because the appellant "always used to say that he was going to kill them, and, he always treated them badly."

Ms. SB's and JB's testimony also indicates the appellant exercised an extreme degree of control over JB's life. The appellant would not let JB have any friends over unless the appellant was there with them, in the same room. The appellant forced JB to leave the bathroom door open when he went to the bathroom or took a shower, looked in at JB while he was in the shower, and at times got into the shower with him. When the appellant was deployed, he called JB, or forced JB to call him, every day, often talking with him into the early morning hours. Further, when he returned from one deployment, the appellant brought JB, then 17 years old, a "gift" of children's underwear, festooned with cartoon characters. The appellant forced JB to model the underwear for 20–30 minutes while the appellant watched to "see if it fit", telling JB it "looked cute" on him.

Based on the evidence of the nature of the appellant's relationship with and treatment of JB, the military judge properly instructed the court-martial panel on the implications of constructive force by a parent or someone acting in loco parentis, were they to find it occurred, on the elements of force and consent. *Davis*, 52 M.J. at 203.

The above evidence, taken together with the other evidence properly admitted at trial, and viewed in the light most favorable to the prosecution, provided a sufficient basis for a rational trier of fact to conclude beyond a reasonable doubt that the appellant forcibly sodomized JB on divers occasions within the time period charged. Further, we ourselves are convinced beyond a reasonable doubt that the appellant is in fact guilty. Mindful that we did not personally observe the witnesses, we find the testimony of the government witnesses both credible and convincing.

*Sentence Appropriateness*

The appellant contends his adjudged and approved sentence was inappropriately severe, arguing his conduct does not warrant both a dishonorable discharge and 35 years confinement.

 This Court reviews sentence appropriateness de novo. *United States v. Baier*, 60 M.J. 382, 383–84 (C.A.A.F.2005); *United States v. Christian*, 63 M.J. 714, 717 (A.F.Ct. Crim.App.2006). We make such determinations in light of the character of the offender, the nature and seriousness of his offenses, and the entire record of trial. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A.1982); *United States v. Bare*, 63 M.J. 707, 714 (A.F.Ct.Crim.App.2006). We have a great deal of discretion in determining whether a particular sentence is appropriate, but are not authorized to engage in exercises of clemency. *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F.1999); *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A.1988); *United States v. Dodge*, 59 M.J. 821, 829 (A.F.Ct.Crim.App.2004). Although we generally consider appropriateness without reference to other sentences, we are required to examine sentence disparities in closely related cases, and permitted-but not required-to do so in other cases. *Christian*, 63 M.J. at 717 (A.F.Ct.Crim.App.2006) (citing *United States v. Wacha*, 55 M.J. 266, 267–68 (C.A.A.F.2001)).

 The appellant cites to a string of cases involving convictions for rape and sodomy which resulted in lighter sentences than that received by the appellant as evidence that the appellant's sentence is disparately harsh. We do not agree. Merely because a case involves similar charges brought under the same section of the UCMJ does not mean it is "closely related" within the meaning of this Court's mandate to determine sentence appropriateness. Rather, "closely related" cases are those which include, for example, "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Lacy*, 50 M.J. at 288. No such connection exists between the appellant's case and those to which he cites.

We are neither persuaded that these cases require sentence comparison, nor convinced the appellant suffered a miscarriage of justice merely because some other offender received a lesser punishment. We note in par-

ticular the egregious, repeated, and extended nature of the appellant's misconduct—he forcibly sodomized a teenage boy four to five times per week for two and one-half to three years. We also note the impact the appellant's offenses had on the victim. JB testified the appellant's actions deprived him of a normal teenage childhood, raised questions about his own sexual orientation, and caused him to consider killing himself. JB also indicated that after reporting the appellant's offenses, he was afraid to go out in public for fear of meeting the appellant and, because of that fear, delayed his plans to go to college. He also reported trouble eating and sleeping, and at time of trial was taking medication for depression. He also underwent several months of counseling, stopping only because his insurance coverage ran out.

Given the magnitude of the appellant's offenses, the impact those offenses had on the victim, and considering the appellant's time in service, military record and all other matters in the record of trial, we find nothing inappropriately severe in the appellant's punishment. The adjudged and approved sentence is fair, just, and appropriate. *See Baier*, 60 M.J. at 384.

### Conclusion

The findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ; *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the findings and the sentence are

AFFIRMED.