**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Airman First Class CHRISTOPHER J. WINSTON**
**United States Air Force**

**ACM 38402**

**08 October 2014**

Sentence adjudged 18 April 2013 by GCM convened at Goodfellow Air Force Base, Texas. Military Judge: Natalie D. Richardson.

Approved Sentence: Bad-conduct discharge, forfeiture of $701.00 pay per month for 6 months, and reduction to E-1.

Appellate Counsel for the Appellant: Major Zaven T. Saroyan and Julie K. Hasdorff (civilian counsel).

Appellate Counsel for the United States: Lieutenant Colonel C. Taylor Smith; Major Roberto Ramírez; and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

TELLER, Judge:

Contrary to his pleas, the appellant was convicted at a general court-martial comprised of officer and enlisted members of three specifications of abusive sexual contact and one specification of communicating indecent language, in violation of Articles 120 and 134, UCMJ, 10 U.S.C. §§ 920, 934.[1] The court sentenced him to a

---

[1] The original charge sheet reflects some specifications were withdrawn prior to trial, and the appellant was acquitted at trial of one specification of abusive sexual contact and two specifications of communicating indecent language.

bad-conduct discharge, forfeiture of $701.00 pay per month for 6 months, and reduction to E-1. The convening authority approved the sentence as adjudged.

The appellant contends: (1) the military judge erred by failing to dismiss the abusive sexual contact charge for lack of notice; (2) the military judge improperly admitted evidence of uncharged misconduct; (3) the evidence was legally and factually insufficient to support his convictions; (4) an unsuspended bad-conduct discharge was inappropriately severe; and (5) reversal of the conviction is required under the cumulative error doctrine.

*Background*

The appellant, while an operations intelligence technical training student, was alleged to have made unwanted advances towards other students. Charge II alleged the appellant directed sexually explicit language at three different classmates. Charge I and the Additional Charge alleged he engaged in abusive sexual contact with two of those three classmates and also with a fourth classmate. The appellant was acquitted of two of the specifications alleged under Charge II and of the Additional Charge.

Two of the sexual contact specifications that resulted in a conviction relate to Airman First Class (A1C) KC.[2] A1C KC and the appellant attended basic training at the same time and were classmates in technical training. A1C KC testified that, several weeks into technical training, the appellant began to make sexually explicit comments to her. (These comments were the subject of Charge II, Specification 1, of which the appellant was found not guilty.) At some point during the training, A1C KC and the appellant got into a disagreement about some rumors the appellant believed were started by A1C KC and her roommate, A1C LL.[3] A1C KC and the appellant agreed to meet one evening to try and resolve their differences. They walked from the dormitories over to an area near the base commissary, where they sat down on opposite sides of an outdoor table.

According to A1C KC, the appellant soon steered the conversation away from the rumors. Within a few minutes, the appellant got up and moved over to A1C KC's side of the table, put his arm around her, and began to kiss her neck. A1C KC nudged him away and gave him a disapproving look. The appellant persisted, saying all he wanted was a kiss. After A1C KC said ok and kissed him on the cheek, the appellant "pulled [her] in for a kiss." When he pulled away he said, "It's not cheating on your husband, if you don't kiss me back." A1C KC testified she became very uncomfortable and stood up to leave, but the appellant followed her, came up behind her, and gave her a "backwards

---

[2] By the time of trial, Airman First Class (A1C) KC had changed her name. This opinion will refer to her by her initials as her name appears on the charge sheet.
[3] A1C LL was the alleged victim in the Additional Charge of abusive sexual contact, of which the appellant was found not guilty.

hug," which she shrugged off. A few steps later, the appellant again came up from behind and wrapped his arms around her, putting one arm on her breast, and squeezed. A1C KC again stepped away from the appellant, telling him no, but the appellant again came up and put his arms around her. This time he placed a hand between her legs in contact with her genitalia and lifted her off the ground. A few days later, A1C KC reported the incident to the base sexual assault response coordinator (SARC).

Two of the specifications related to A1C ET, a student in a class behind the appellant. A1C ET testified she knew the appellant but didn't hang out with him. During a unit sports day, the appellant was present when A1C ET was talking about her upcoming marriage. In response, the appellant said he would "dominate" her, "destroy" her, and "tear that a[**] up." These remarks formed the basis for Charge II, Specification 2, of which the appellant was found not guilty. A1C ET did not confront the appellant about the statements. Sometime later, as the appellant and A1C ET were walking away after a unit formation, the appellant briefly grabbed A1C ET "on [her] butt."[4]

The last specification of which the appellant was convicted related to comments he made to A1C (then Airman Basic) BP. A1C BP met the appellant during her first week of technical training. She testified the appellant used various vulgar phrases to suggest he wanted to have sex with her. She told him to stop and that his comments were unwelcome, as she had a boyfriend. The appellant's comments continued and escalated, however, until at one point he said he would "sneak her into his room and pound her" or words to that effect. A1C BP took this to have a sexual connotation, and it made her feel threatened. A1C BP finally confronted the appellant, saying she would "break his arm" if he did not stop. The confrontation and A1C BP's efforts to avoid the appellant soon ended the comments towards her.

*Lack of Notice as to Specific Intent in Abusive Sexual Contact Specifications*

The specifications alleging the appellant engaged in abusive sexual contact spanned a date range between 1 July 2012 and 30 November 2012. The National Defense Authorization Act for Fiscal Year 2012 contained changes to Article 120, UCMJ, that had taken effect by the time of the appellant's alleged misconduct. However, the *Manual for Courts-Martial* (*MCM*) had not yet been updated to enumerate elements of the revised offenses. *See MCM*, Analysis of Punitive Articles, App. 23, A23-15 (2012 ed.). The appellant asserts that, in the absence of an update to the *MCM*, the case of *United States v. Fosler*, 70 M.J. 225 (C.A.A.F. 2011), requires the government to expressly allege which of the two specific intent clauses in Article 120's definition of

---

[4] Although the charge sheet alleged abusive sexual contact against A1C ET on divers occasions, A1C ET testified that this incident was the only one she specifically recalled. The court found the appellant guilty of the offense on this one occasion by exceptions and substitutions.

"sexual contact" the appellant was required to defend against.[5] The government asserts the specification need only allege, either expressly or by necessary implication, each element of the offense, and suggests the statutory elements of abusive sexual contact do not include the specific intent alternatives included in the definition of sexual contact.

*Fosler* reiterated the due process notice requirement as it pertains to charging under the UCMJ:

> The military is a notice pleading jurisdiction. A charge and specification will be found sufficient if they, first, contain the elements of the offense charged and fairly inform a defendant of the charge against which he must defend, and, second, enable him to plead an acquittal or conviction in bar of future prosecutions for the same offense. The rules governing court-martial procedure encompass the notice requirement: "A specification is sufficient if it alleges every element of the charged offense expressly or by necessary implication." R.C.M. 307(c)(3).

70 M.J. at 229 (citations, internal quotation marks, and alterations omitted).

In this particular case, we need not resolve whether statutory definitions can ever rise to the level of an element for the purposes of Rule for Courts-Martial (R.C.M.) 307(c)(3) because our superior court has already construed a similar provision of the previous version of Article 120.

In *United States v. Alston*, 69 M.J. 214 (C.A.A.F. 2010), the Court of Appeals for the Armed Forces addressed whether aggravated sexual assault was a lesser included offense of rape. To answer that question, the court was required to determine the elements of the two offenses. The court held "[t]he offense of aggravated sexual assault, in the context of the charge at issue in the present case, has two elements: (1) causing another to engage in a sexual act, and (2) causing bodily harm." *Id*. at 216. The definition of "sexual act" applicable to that time was set out in Article 120(t)(1) and provided:

> (1) Sexual act. The term "sexual act" means—
>
> (A) contact between the penis and the vulva, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight; or

---

[5] Following the 2012 amendment, Article 120(g)(2), UCMJ, 10 U.S.C. § 920(g)(2), defines "sexual contact" as specified forms of bodily contact done with (1) "an intent to abuse, humiliate, or degrade any person," or (2) "an intent to arouse or gratify the sexual desire of any person."

(B) the penetration, however slight, of the genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, or degrade any person or to arouse or gratify the sexual desire of any person.

*See MCM*, Part IV, ¶ 45.a.(t)(1) (2008 ed.) (text of the statute).

Despite the fact that this statutory definition of sexual act contained two disjunctive factual predicates *and* the two specific intent alternatives at issue in this case, the *Alston* court did not find either of those statutory alternatives were elements in the sense of providing notice to the accused of the allegations he was required to defend against. Although Article 120 has changed since *Alston*, we do not find the changes would affect our superior court's rationale. Accordingly, we hold the abusive sexual contact specifications properly alleged, expressly or by implication, the elements of the offense and provided adequate notice to the appellant of the offense charged.

*Uncharged Misconduct*

After A1C ET testified about the instance when the appellant grabbed her, the following exchange ensued:

[TC:] Now, how many times did that happen?"

[WIT:] That time is one that I remembered. There could have been others. None that I can specifically –

[DC:] Objection, Your Honor.

MJ:   Basis or are you withdrawing your objection or –?
      [The defense consulted with one another.]

[DC:] Under 404(b), Your Honor, for uncharged misconduct.

MJ:   Are you moving on government?

[TC:] Yes, Your Honor.

MJ:   All right. I'm going to allow that answer. Go ahead.

The appellant now argues the military judge improperly admitted this evidence of uncharged misconduct. We disagree.

We review a military judge's evidentiary rulings for an abuse of discretion. *United States v. McCollum*, 58 M.J. 323, 335 (C.A.A.F. 2003). We review the admissibility of uncharged misconduct under Mil. R. Evid. 404(b), under the three-part test articulated in *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989). The first part of that test is: "Does the evidence reasonably support a finding by the court members that appellant committed prior crimes, wrongs or acts?" *Id.*

The only reasonable interpretation of the testimony allowed by the military judge is that the witness did not actually recall any other instances. Such testimony is not evidence of "uncharged misconduct." While her statement "[t]here could have been others" may have been the appropriate subject for an objection that the testimony was speculative, in context it was not evidence of other wrongs subject to a Mil. R. Evid. 404(b) objection, and therefore, the military judge did not abuse his discretion in overruling the defense objection.

*Legal and Factual Sufficiency*

The appellant argues the evidence was factually and legally insufficient to support his convictions. We review issues of factual and legal sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

"The test for legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (internal quotation marks omitted). The term reasonable doubt does not mean the evidence must be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (internal quotation marks omitted). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

With regard to his convictions for abusive sexual contact, the appellant argues the evidence is legally insufficient because no direct evidence of intent was admitted.

However, "direct evidence of a crime or its elements is not required for a finding of guilty; circumstantial evidence may suffice." *United States v. Hart*, 25 M.J. 143, 147 (C.M.A. 1987); *see also* R.C.M. 918(c) ("Findings may be based on direct or circumstantial evidence."). A factfinder may reasonably rely on the surrounding circumstances to infer whether an accused had a requisite intent. As to the specifications relating to A1C KC, a reasonable factfinder could infer the appellant had the intent to gratify his sexual desires from her testimony that the appellant kissed her shortly before he touched her breast and genitalia. Similarly, a reasonable factfinder could infer from the appellant's statements to A1C ET (that he would "tear that a[**] up") that the appellant intended either to abuse, humiliate, or degrade her or to gratify his own sexual desires by touching her buttocks. The fact that the members did not find the appellant guilty of the indecent language specification involving this same language does not render this testimony legally insufficient to support the required mental state for abusive sexual contact.

As to his conviction for indecent language, the appellant asserts the evidence does not support that he said to A1C BP all of the words charged in the specification. Specifically, the appellant argues he was charged with saying both "I want to f[***]/pound you" and "I am going to sneak you into my room and f[***] you," but there was no evidence introduced on the second phrase. He further asserts there was no evidence the language was prejudicial to good order and discipline. This claim is unsupported by the record. On redirect A1C BP testified, "[The appellant] said that whenever he [became a Transition Period Graduate], he was going to sneak me into his dorm room, since they were coed[,] and pound me into the floor." She also testified that she took the statement to have a sexual connotation. Since the specification charging the indecent language included the statement "or words to that effect," A1C BP's testimony is legally sufficient to support the appellant's conviction. A1C BP also testified that, as a result of the appellant's statement, "it didn't exactly feel safe going back to [her] room." A reasonable factfinder could certainly infer that undermining A1C BP's sense of security in her assigned room prejudiced good order and discipline.

We are similarly convinced the evidence was factually sufficient. The appellant places great emphasis on the lack of corroborating evidence for the testimony of A1C KC, A1C ET, and A1C BP. He suggests all of the alleged incidents occurred in full public view, and the absence of any corroborating evidence from someone other than the victim should raise doubts as to the veracity of the victims' testimony. He specifically questions the credibility of A1C KC, who testified on cross-examination that she had lied to her roommate and had omitted any reference to the incident on a medical screening form. Such questions of credibility depend heavily on the factfinder's ability to observe the demeanor of the witness. As noted above, we must make allowances for not having personally observed the witnesses. After making such allowances, we do not find the absence of third-party corroborative reports substantially undermines the witnesses' testimony. We are also not convinced A1C BP's admitted false statements and minor

inconsistencies are of such a character that they call her testimony about being assaulted into question. Having weighed all the evidence in the record of trial and having made allowances for not personally observing the witnesses, we are convinced of the appellant's guilt beyond a reasonable doubt.

*Sentence Appropriateness*

The appellant further contends his unsuspended bad-conduct discharge is inappropriately severe. In reviewing sentence appropriateness, we "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense, the appellant's record of service, and all matters contained in the record of trial. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982); *United States v. Rangel*, 64 M.J. 678, 686 (A.F. Ct. Crim. App. 2007). We have a great deal of discretion in determining whether a particular sentence is appropriate, but we are not authorized to engage in exercises of clemency. *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999); *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A. 1988).

Applying these standards to the present case, we do not find a bad-conduct discharge inappropriately severe for the appellant's pattern of abusive conduct towards his fellow Airmen. In particular, we note the approved sentence included no confinement. The appellant invites us to consider case law holding that the substitution of up to two years of confinement for a bad-conduct discharge did not increase the severity of the sentence. Instead, we are mindful of our superior court's holding that a bad-conduct discharge is "qualitatively different" than confinement. *United States v. Zarbatany*, 70 M.J. 169, 175 (C.A.A.F. 2011). We find that a sentence that focuses on the punitive termination of the appellant's military status is appropriate in light of the corrosive effect his conduct had on the mutual trust essential to military service.

*Cumulative Error*

Finally, the appellant contends that even if none of his multiple assignments of error entitle him to relief, he is nevertheless entitled to relief under the cumulative error doctrine. We review such claims de novo. *United States v. Pope*, 69 M.J. 328, 335 (C.A.A.F. 2011). Under this doctrine, "a number of errors, no one perhaps sufficient to merit reversal, in combination necessitate the disapproval of a finding." *Id.* (quoting *United States v. Banks*, 36 M.J. 150, 170–71 (C.M.A. 1992). As we have found no merit in any of the appellant's assigned errors, the cumulative error doctrine provides the appellant with no basis for relief. *See United States v. Gray*, 51 M.J. 1, 61 (C.A.A.F. 1999) ("Assertions of error without merit are not sufficient to invoke this doctrine.").

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred.[6]  Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).  Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

---

[6] The court-martial order (CMO) contains minor typographical errors.  The CMO states that Specification 1 of Charge I alleged the appellant touched the victim's breast with "is" hand vice with "his" hand; it also erroneously reports that Specification 3 of Charge I alleged the appellant touched the victim's buttocks "by causing bodily harm to [the victim's] buttocks with his hand" vice "by causing bodily harm to [the victim]."  We order promulgation of a corrected CMO.

ACM 38402