OPINION OF THE COURT
STONE, Senior Judge:
The appellant appeared before a general court-martial consisting of officer and enlisted members on charges he sexually molested his natural daughter, RB.
He pled not guilty to two specifications alleging he sodomized RB on divers occasions.[1] The first specification covered the period when RB was under the age of 12, and the second covered the period when she was 12 yet still under 16.[2] The court members found him guilty of the first specification, but not the second.
He entered mixed pleas to two other specifications.[3] The first alleged he committed indecent acts on RB on divers occasions. The appellant pled guilty to a single incident of indecent acts, by exceptions, but the court members ultimately convicted him of this specification as charged. The second specification alleged indecent liberties with RB on divers occasions. Contrary to his pleas, the court members found him guilty of this conduct.
The appellant was sentenced to a dishonorable discharge, confinement for 40 years, and reduction to the grade of E-l. The convening authority approved the findings and sentence as adjudged.
Before this Court, the appellant raises the following issues:
I.
WHETHER THE MILITARY JUDGE ERRED IN ADMITTING EVIDENCE OF UNCHARGED SEXUAL ACTS BETWEEN APPELLANT, WHEN HE WAS 15 OR 16 YEARS OLD, AND HIS 8-YEAR-OLD SISTER, 17 YEARS BEFORE THE CHARGED OFFENSES.
II.
WHETHER THE EVIDENCE IS LEGALLY AND FACTUALLY SUFFICIENT TO SUPPORT THE FINDING OF GUILT AS TO SPECIFICATION 2 OF CHARGE II, TAKING INDECENT LIBERTIES WITH RB.
III.
WHETHER THE PORTION OF THE APPELLANT’S SENTENCE CALLING FOR A DISHONORABLE DISCHARGE AND 40 YEARS OF CONFINEMENT IS INAPPROPRIATELY SEVERE.
Finding no merit to these issues, we affirm.[4]

I. Propensity Evidence

a. Background,
At trial, the government sought to admit the testimony of KB, the appellant’s sister, regarding his sexual molestation of her when she was between the approximate ages of 7 and 11 and the appellant was between the approximate ages of 15 and 19. This conduct occurred between 1984 and 1987, some 17 to 19 years prior to trial. The government moved to admit this evidence under Military Rule of Evidence (Mil. R. Evid.) 414, which provides for the admission of similar crime *705 evidence in child molestation cases.[5] Subsection (a) of this Rule states: “In a court-martial in which the accused is charged with an offense of child molestation, evidence of the accused’s commission of one or more offenses of child molestation is admissible and may be considered for its bearing on any matter to which it is relevant.”
Before making a ruling, the military judge conducted a full hearing outside the presence of the court members. KB testified, and the defense presented expert testimony from Dr. Jeffrey N. Younggren, a clinical psychologist, to challenge KB’s recollection of the events that had occurred 17 to 19 years earlier. At the conclusion of the motion hearing, the military judge entered the following findings of fact:
1. [KB] is the sister of the accused. She is the youngest of four children. The accused is the oldest of the four. The accused is approximately 8 years older than [KB],
[KB] was born in 1976. Initially, she lived with her parents and brothers in Pennsylvania. The relationship between [KB] and her brothers was normal until she turned 8.
When [KB] turned 8, the accused began to touch her chest, breasts, and thighs. The accused used his hands to touch [KB]. The accused would also stroke [KB’s] vaginal area. The touching occurred both above and beneath [her] clothing. The accused touched [her] one to two times per week while [they lived] in Pennsylvania. The accused was approximately 16 at the time the touching began____
4. When [KB] was approximately 9-years old, her family moved to Ohio. Over the next two years the accused continued to touch [her] breasts, thighs, and vaginal area. The accused used his hands during these incidents. The touching occurred under [KB’s] clothing.
5. On at least one occasion while the accused was touching [her], he asked [KB] if she was okay, and asked whether he was hurting her. On at least one occasion the accused digitally penetrated [KB’s] vagina. The accused stopped touching [KB] when she was 11 [years old].
6. [KB] reported the accused’s touching to a school counselor when she was 13. The touching covered the period between 1984 through 1987.
7. [RB] is the natural daughter of the accused. When [RB] ... was approximately 5 or 6 the accused began to touch her breasts, rub her vaginal area, rub his penis on her body, [and] have [RB] stroke his penis with her hands. The touching progressed from slight touching to skin-to-skin contact. The incidents began while the accused and [RB] were living in Nevada. The touching occurred more frequently after they moved to Illinois. It occurred almost every time the accused and [RB] were alone. The touching also occurred in Florida [where the appellant moved pursuant to a change of military assignment]. The touching continued until the summer of 2000, when [RB] was approximately 10 years old____
8. [TA] is the stepdaughter of the accused.[6] She was born on 18 October 1986. Approximately six to seven months after the accused married [TA’s] mother, the accused started touching [TA]. The *706 touching included over and under her shirt, and occurred three to four times per week until she told her mother. The accused touched [TA’s] breasts, stomach, back, thighs, and top of her legs. These incidents occurred while the Bares lived in Illinois. [TA] was in the ... 4th grade at this time____
9. The accused is charged with several offenses that involve child molestation involving ... [his natural daughter RB],
After conducting an extended analysis under Mil. R. Evid. 403 on the record, the military judge ruled that KB’s testimony was admissible.

b. Law

“We review a military judge’s decision to admit propensity evidence for an abuse of discretion.” United States v. James, 60 M.J. 870, 871 (A.F.Ct.Crim.App.2005), aff'd, 63 M.J. 217 (C.A.A.F.2006). See also United States v. Dewrell, 55 M.J. 131, 137 (C.A.A.F.2001); United States v. Bailey, 55 M.J. 38, 41 (C.A.A.F.2001). “If the military judge makes findings of fact, we review the findings under a clearly erroneous standard of review. We review conclusions of law de novo.” United States v. Springer, 58 M.J. 164, 167 (C.A.A.F.2003) (citing United States v. Alameda, 57 M.J. 190, 198 (C.A.A.F.2002)).
To determine the admissibility of propensity evidence in child molestation eases, we initially apply the three-part analysis found in United States v. Wright to determine logical relevance. 53 M.J. 476, 482 (C.A.A.F.2000). See also Huddleston v. United States, 485 U.S. 681, 684, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). Although Wright addresses Mil. R. Evid. 413 (evidence of uncharged crimes in sexual assault cases), the same analysis applies to child molestation cases. United States v. Henley, 53 M.J. 488, 490 (C.A.A.F.2000); James, 60 M.J. at 871. To find the appellant’s sister’s testimony admissible as propensity evidence under Mil. R. Evid. 414, we must determine whether:
• The accused is charged with an offense of child molestation;
• The proffered evidence involves the accused’s commission of another offense of child molestation; and
• The evidence is relevant under Mil. R. Evid. 401 and 402.
James, 60 M.J. at 871.
On appeal, however, the appellant does not dispute the military judge’s threshold determination of admissibility for logical relevance under the Wright three-part analysis. [7] Rather, he argues that the military judge abused his discretion in applying the balancing test found in Mil. R. Evid. 403, which reads:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
When applying the balancing test to determine legal relevance, a military judge acts as a gatekeeper and must avoid admitting propensity evidence that is “unduly prejudicial.” See generally James, No. 05-0374/AF, slip op. at 14; United States v. Berry, 61 M.J. 91 (C.A.A.F.2005); Wright, 53 M.J. at 482-83. Our superior court has done so by emphasizing the importance of the Mil. R. Evid. 403 balancing test when admitting uncharged misconduct and propensity evidence. Wright, 53 M.J. at 482.
In Wright, the Court established a nonexclusive list of factors to consider in determining the probative value of the propensity evidence against its prejudicial effect. These include:
*707 • the strength of the proof of the prior act
• its probative weight
• the potential for less prejudicial evidence
• any distraction to the factfinder
• the time needed to prove the prior conduct
• the temporal proximity of the acts
• frequency of the acts
• presence or lack of intervening circumstances
• relationship between the parties
Wright, 53 M.J. at 482-83 (citing United States v. Enjady, 134 F.3d 1427, 1433 (10th Cir.1998); United States v. Guardia, 135 F.3d 1326, 1331 (10th Cir.1998)). A military judge who articulates a “careful and reasoned” Mil. R. Evid. 403 balancing analysis on the record, is accorded greater deference than one who only makes a pro forma determination. Dewrell, 55 M.J. at 138. See also James, No. 05-0374/AF, slip op. at 15.
c. Discussion
In support of his argument that the military judge erred in applying Mil. R. Evid 403, the appellant relies heavily on our superior court’s decision in Berry. Although Berry is based upon Mil. R. Evid. 413, rather than Mil. R. Evid. 414, it is instructive for the issue at hand.
Berry was convicted of committing forcible sodomy on one of his fellow noncommissioned officers after an evening of heavy drinking. Berry admitted to sodomy, but claimed it was consensual. In response, the government called LS, a 13-year-old boy, to the stand. LS testified that 8 years prior, when he was 6 and Berry was 13, the accused performed oral sex on him on a single occasion. In concluding this evidence was improperly admitted, our superior court noted, “[Military judges must take care to meaningfully analyze the different phases of the accused’s development rather than treat those phases as being unaffected by time, experience, and maturity.” Berry, 61 M.J. at 97. In writing for the majority, Judge Erd-mann concluded that the passage of eight years constituted a “notable intervening circumstance between the two events at issue when coupled with Berry’s growth from childhood to adulthood during that time.” Id. (emphasis added).
The military judge’s ruling on the admissibility of KB’s testimony covered seven pages in the record of trial and included extensive findings of fact, which we conclude are not clearly erroneous. With one exception, his analysis of the Wright factors was “careful and reasoned,” and therefore we will accord his determination that KB’s testimony was more probative than prejudicial with greater deference than had he not done so.
The one area he failed to address, however, was important—whether there were any “intervening circumstances” between the times the appellant molested his sister and when he molested his daughter. Fortunately, the record of trial was sufficiently developed below for this Court to conduct a more expanded analysis. Our primary focus is on whether the appellant’s sexual conduct with his sister was merely a developmental phase that was later overcome by intervening circumstances. See generally James, No. 05-0374/AF, slip op. at 12 (“People certainly do change over time and the fact that someone [sic] acts in a particular manner does not mean that they have always acted in that manner, or for that matter that they always will.”).
We have considered the nature and extent of the appellant’s conduct with his sister in the context of the broader familial situation. KB testified that her earliest memories of the sexual activities she had with her brother involved sexual play with Barbie dolls, which standing alone, could be considered within the range of normal sexual curiosity among siblings. The appellant also claimed his own father sexually abused him, and testimony at trial indicated his father had been convicted of sexual improprieties with a minor and was known for his overt and inappropriate sexual behavior with adults. As a result, Dr. Younggren testified the appellant might not have appreciated the “indecency” of his conduct with his sister. Nonetheless, we are firmly convinced the appellant’s behavior toward his sister was not short-lived sexual *708 curiosity fueled by the example of his father’s own inappropriate conduct.
First, the appellant’s brief to this Court repeatedly refers to the appellant as being “15 or 16” during the period he abused his sister, but the evidence adduced at trial established his conduct covered the three-year period between 1984 and 1987. Although the appellant’s indecent acts toward his sister began when he was “15 or 16,” they continued until he was approximately 19 years old (at or near the time he married his first wife and roughly two years prior to his entry into the military) when he was at a relatively mature age and making significant life choices.
Moreover, the more probative period to consider in determining whether intervening circumstances affected the appellant’s sexual interests is not when charges were brought to trial, but rather from the point when the abuse of his sister stopped and the abuse of his daughter began—about eight years, a much shorter intervening period. Additionally, one year after he began molesting his daughter, he started molesting TA, his nine-year-old stepdaughter, once again indicating his sexual propensities remained unchanged from his adolescence despite the passage of time or significant adult experience.
The commonalities in his conduct toward each of the three girls he abused are obvious. Unlike Berry, which involved only a single prior incident of sexual misconduct, the evidence in this case reflects numerous examples of similar conduct occurring under similar circumstances. The appellant was an authority figure for all three girls (either in a parental role or as the eldest brother), the abuse was frequent and extended over many years with each, and the abuse consisted of nearly identical acts (with the exception of the sodomy and indecent liberties charges which only involved his daughter). In the final analysis, the appellant appears to have sexually molested his vulnerable female relatives whenever the opportunity presented itself. This is the exact sort of behavior contemplated by Mil. R. Evid. 414.
It is of some import, however, that the appellant did ultimately seek some counseling for his behavior. Counseling was triggered by events involving his stepdaughter, whom he began molesting only a few months after marrying her mother. The abuse continued three or four times a week over the next few years. In the fall of 1997, the appellant’s wife walked in on the appellant and found him molesting TA. She did not report the incident to authorities, but insisted he obtain counseling. She also put locks on the girls’ bedroom doors and minimized opportunities for the appellant to be alone with them.
The appellant began counseling with a family therapist. He attended four to five sessions between December 1997 and 5 February 1998. He advised the therapist he had sexual ideations about his stepdaughter, but denied he ever acted on these desires.
The abbreviated counseling he received from a relatively inexperienced family therapist, where he failed to admit to the full extent of his pedophilia, is not a significant intervening circumstance warranting the exclusion of KB’s testimony. To the extent the appellant modified his conduct after receiving counseling, this was more likely due to his wife’s hyper-vigilance than to his own improved self-awareness and control.
Under the circumstances of this case, we decline to afford the appellant the same benefit of the doubt regarding his mental and emotional maturity as our superior court accorded the 13-year-old boy in the Berry case. We are not convinced that the appellant’s propensity to molest young females was significantly affected by the intervening period between the time he abused his sister and the molestation of his daughter after the counseling session ended. Indeed, the great similarity in the nature and duration of the appellant’s sexual misconduct toward his female child relatives convinces us that his compulsion to molest was unaffected by intervening circumstances and does not change over time.
In view of the limiting instruction to the members on how to use this evidence, we conclude that KB’s testimony was more probative than prejudicial. See Mil. R. Evid. 105; Dewrell, 55 M.J. at 138. The military *709 judge did not abuse his discretion in admitting this testimony.

II. Legal and Factual Sufficiency

The appellant next challenges the legal and factual sufficiency of Specification 2 of Charge II, which alleges the appellant took indecent liberties on divers occasions with RB “by having her wear women’s lingerie and by watching her urinate, with the intent to gratify his sexual desires.” The basis for his challenge to these findings is that this conduct was outside the statute of limitations.
The test for determining factual sufficiency is “whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses,” we are ourselves “convinced of the accused’s guilt beyond a reasonable doubt.” United States v. Turner, 25 M.J. 324, 325 (C.M.A.1987). For legal sufficiency, “[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The convening authority’s staff judge advocate signed for receipt of sworn charges in this case on 30 April 2003, thus any conduct prior to 30 April 1998 is outside the statute of limitations and would be legally and factually insufficient to support this Specification. See Article 43(b)(1), UCMJ, 10 U.S.C. § 843(b)(1).
At trial, the parties used certain known events to pinpoint the dates and times of the molestation. One of the key dates for pinpointing events involved the time when the appellant’s wife found the appellant lying in bed with TA. Testimony at trial indicated this event occurred in “late fall '97,” and that the counseling sessions were held between December 1997 and 5 February 1998. With the single exception being the incident to which the appellant pled guilty, the trial defense counsel maintained the appellant had not engaged in any improper conduct with his daughter after receiving counseling. Indeed, his stepdaughter testified at trial that the appellant did not bother her after her mother walked in on the appellant molesting her.
Although RB was uncertain as to the exact date of the events pertaining to this specification, she repeatedly testified she believed the events involving the use of lingerie and watching her urinate occurred before her stepmother caught the appellant lying in bed with TA. If correct, this would put the crimes outside the statute of limitations.
However, RB also repeatedly testified she had already made friends with TM—a six-year-old child who lived near her on Scott Air Force Base—by the time the incidents involving the lingerie and urination took place. RB testified that whenever the appellant molested her, she often told TM about it. The parties stipulated to the expected testimony of TM’s mother, who said her family first moved onto Scott Air Force Base in October 1998. During her trial testimony, RB insisted that the events forming this specification occurred after she first met TM in October 1998, a period within the statute of limitations.
Court members may believe one portion of a witness’s testimony but disbelieve others. United States v. Harris, 8 M.J. 52, 59 (C.M.A.1979). The court members heard the testimony, considered the evidence, and found the appellant guilty of the specification. In view of the military judge’s instruction to the court members that they could not find the appellant guilty of any offense that occurred prior to 30 April 1998, we conclude the finding of guilty to this specification is legally sufficient. Having carefully reviewed RB’s testimony on this point, we also are convinced the conduct alleged in Specification 2 of Charge II was within the statute of limitations and that the appellant’s guilt was established beyond a reasonable doubt. The evidence is factually sufficient to support this specification. Article 66(c), UCMJ, 10 U.S.C. § 866(c).

III. Sentence Appropriateness

The appellant next asks this Court to provide meaningful relief by substantially reducing his sentence. In support of this issue, he notes that after his wife caught him in TA’s room, his misconduct “substantially dis *710 sipated,” indicating he has rehabilitation potential. He also asks that we consider similar, but unrelated, cases in determining the appropriateness of his sentence, and the “highly inflammatory” nature of the testimony from his sister. He further notes that Dr. Younggren believed his chance of recidivism was lower than those who are “more predatory in nature.”
We “may affirm only such ... sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[ ], on the basis of the entire record, should be approved.” Article 66(c), UCMJ. We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant’s record of service, and all matters contained in the record of trial. United States v. Healy, 26 M.J. 394, 395-96 (C.M.A.1988); United States v. Snelling, 14 M.J. 267, 268 (C.M.A.1982). After careful consideration of these matters, we conclude the appellant’s sentence is not inappropriately severe.

Conclusion

The approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ; United States v. Reed, 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the findings and sentence are
AFFIRMED.
Judge SMITH participated in this decision prior to his reassignment.

. See Article 125, UCMJ, 10 U.S.C. § 925.

. RB was 14 years old at the time of trial.

. See Article 134, UCMJ, 10 U.S.C. § 934.

. We heard oral argument on Issues I and II at the Air War College, Maxwell Air Force Base, Alabama, as part of the Court's Project Outreach Program.

. Alternatively, the government argued the testimony was admissible under Mil. R. Evid. 404(b). This Rule permits the use of evidence of other crimes when it is offered on non-propensity grounds, such as intent or a common plan—the specific grounds the government sought to use in this case. The court below found the evidence admissible under Mil. R. Evid. 404(b), and the appellant challenges that decision on appeal. Given our determination that the military judge did not err in admitting the testimony under Mil. R. Evid. 414, we do not address the alternate theory of admissibility.

. The appellant's stepdaughter testified during findings that he indecently assaulted her on divers occasions. This conduct fell outside the statute of limitations but was admitted pursuant to Mil. R. Evid. 414. The appellant does not challenge the admissibility of this evidence. Similarly, the appellant does not challenge the admissibility of the uncharged misconduct involving RB that fell outside the statute of limitations. See generally United States v. Henley, 53 M.J. 488, 490 (C.A.A.F.2000). He does, however, argue that Specification 2 to Charge II is legally and factually insufficient because it falls outside the statute of limitations. This issue is discussed infra.

. At trial, the key point of contention was on the second prong. The court below first examined statutes from Pennsylvania and Ohio, the jurisdictions where the conduct with KB occurred. The military judge noted that both statutes described an indecent/sexual assault as contact with a victim who is under 13 years of age and that “[njeither statute places an age requirement on the accused if the victim is under the age of 13.” Second, the government correctly noted that the appellant's inappropriate behavior with his sister appeared to meet the diagnostic criteria for pedophilia found in the American Psychiatric Association’s Diagnostic and Statistical Manual of Mental Disorders, § 302.2, at 572 (4th ed.2000). Based upon these objective criteria, the military judge concluded the uncharged conduct amounted to "child molestation.”