# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Staff Sergeant JOHNATHAN R. ANDERSON
### United States Air Force

## ACM 38399

## 19 May 2014

Sentence adjudged 12 April 2013 by GCM convened at Dover Air Force Base, Delaware. Military Judge: Christopher A. Santoro.

Approved Sentence: Bad-conduct discharge, confinement for 6 months, and reduction to E-1.

Appellate Counsel for the Appellant: Captain Jeffrey A. Davis.

Appellate Counsel for the United States: Gerald R. Bruce, Esquire; Major Daniel J. Breen; and Major Jason S. Osborne.

Before

ROAN, HELGET, and WEBER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

HELGET, Senior Judge:

A general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of one specification each of maltreatment of a subordinate and abusive sexual contact, in violation of Articles 93 and 120, UCMJ, 10 U.S.C. §§ 893, 920.[1] The members sentenced the appellant to a bad-conduct discharge, confinement for 6 months, and reduction to E-1. The convening authority

---

[1] The appellant was acquitted of one specification of sexual assault, in violation of Article 120, UCMJ, 10 U.S.C. § 920.

approved the adjudged sentence but deferred mandatory forfeitures until the date of the Action.

Before this Court, the appellant claims that his sentence is inappropriately severe. Finding no error that materially prejudices a substantial right of the appellant, we affirm.

*Background*

At all times relevant to the charges in this case, the appellant was assigned to the 436th Aerial Port Squadron, Dover Air Force Base (AFB), Delaware. The two victims in this case were subordinate female airmen who worked in the same work center as the appellant.

Sometime in September 2010, Staff Sergeant (SSgt) CM (then Senior Airman) returned to work after taking some time off following an altercation with her husband, which had led to her having a black eye. The appellant asked SSgt CM to join him for a cigarette at the smoke pit, where he inquired into how she and her husband were doing. After a few minutes, the appellant asked SSgt CM, "Can you keep a secret?" SSgt CM replied, "Sure, I can keep a secret." The appellant then said, "Well, I really just want to f[***] the sh[**] out of you." The appellant made other similarly inappropriate sexual comments to SSgt CM that day and continued to make inappropriate comments to her just about every time he saw her over the following few weeks. In total, SSgt CM testified that the appellant made around 100 inappropriate comments. These comments made her feel awkward and really uncomfortable. Eventually, SSgt CM reported the matter to her supervision and the appellant ceased making further inappropriate comments.

The second victim in this case was Airman First Class (A1C) KG. She arrived at Dover AFB in June 2012 and was assigned to the 436th Aerial Port Squadron. This was her first assignment, and the appellant was her supervisor.

On 29 July 2012, while at the smoke pit with the appellant during a work break, the appellant commented that she looked really tired. He then asked her, "Well, do you know what would wake you up?' A1C KG replied, "No, what?" The appellant said, "A quickie in the office." A1C KG initially laughed it off, but as they were driving in a golf cart on the way back to work, the appellant again asked her if she wanted to engage in sex. She continued to brush him off. When they stopped at one of their work centers, A1C KG stayed in the golf cart because she thought the appellant was going in to get something and then return. However, the appellant asked her if she was coming with him. When A1C KG stated that she wasn't going inside with him, the appellant said, "I thought we were going to have a quickie in the office." The appellant then got back into the golf cart and they drove to another work center. On the way, the appellant told her

that she should keep his offer in mind. A1C KG said, "No," as she did not want to engage in sexual relations with the appellant.

When they arrived at the work center, the appellant asked A1C KG, "Well, do you want to see what you're going to be handling?" Feeling disgusted, A1C KG said, "No." The appellant then changed his tone and seriously asked her if she would come to his office as he wanted to discuss something with her. A1C KG complied primarily because she felt she had no other choice since the appellant was her supervisor and she was a new airman in the Air Force.

When she entered the appellant's office, A1C KG stayed as far away as possible on the opposite side of the office from where the appellant was sitting. Soon thereafter, the appellant asked her if she would flash him. She replied, "No." The appellant then told her that her breasts looked so perfect in a bathing suit that he wanted to see them. A1C KG turned around and started to walk away. As she was walking away, the appellant approached her from behind, placed his hands on her hips, and touched her buttocks with his groin. This lasted for a few seconds. A1C KG managed to free herself from the appellant and proceeded to leave. The appellant came around in front of her, gave her a hug, and told her not to tell anyone what had just happened. He also told her to keep his offer in mind.

A1C KG proceeded back to work. At some point, she needed to use the golf cart, and the appellant decided to join her. Feeling nervous, she decided to text her rater, SSgt AK, that she needed help. SSgt AK called her while she was driving in the golf cart with the appellant. When the phone rang, A1C KG jumped out of the golf cart and went to a nearby restroom to speak with SSgt AK. While she was speaking to SSgt AK, the appellant started pounding on the restroom door, so she ended her conversation with SSgt AK. As the appellant indicated he needed to speak to her, they decided to go to the smoke pit. While at the smoke pit, the appellant started apologizing profusely and asked that she not "SARC" him, meaning that he did not want her to contact the Sexual Assault Response Coordinator (SARC) on base.

SSgt AK eventually showed up, and the appellant likewise apologized to him for making inappropriate comments to A1C KG. However, the appellant never mentioned that he had touched A1C KG's buttocks with his groin. A1C KG eventually reported the incident to the SARC the following week.

The Government also called three other female airmen who testified that the appellant had made inappropriate sexual comments towards them. During sentencing, A1C KG testified that as a result of the appellant's actions, she felt isolated at work, she lost some of her friends, and she no longer trusted others, especially military members.

*Sentencing Severity*

The appellant asserts that his sentence is overly harsh in light of the specific facts and circumstances of his case, especially in comparison with other similar cases in which significantly less confinement and no punitive discharges were adjudged. We disagree.

This Court reviews sentence appropriateness de novo. *United States v. Nerad*, 69 M.J. 138, 142 (C.A.A.F. 2010). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982); *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006). We examine disparate sentences in closely related cases when: (1) there is a direct correlation between each of the accused's and their respective offenses; (2) the sentences are highly disparate; and (3) there are no good and cogent reasons for the differences in punishment. *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999). To be closely related, there must be a nexus between the cases, such as "coactors involved in a common scheme, service members involved in a common or parallel scheme, or some other direct nexus between the service members whose sentences are sought to be compared." *Id.* We have a great deal of discretion in determining whether a particular sentence is appropriate, but we are not authorized to engage in exercises of clemency. *Nerad*, 69 M.J. at 148; *United States v. Healy*, 26 M.J. 394, 395-96 (C.M.A. 1988).

Applying these standards to the present case, we do not concur with the appellant that the cases cited in support of his position are closely related. None of the cases cited by the appellant involved co-actors or were part of a common scheme, and there is no evidence showing a direct nexus between those cases and the appellant's case. The cases cited do not involve either the same charges or the same number of victims. Further, although the appellant received a punitive discharge while the others did not, we do not find that the sentences were "highly disparate." Moreover, having considered the nature and seriousness of the appellant's offenses, to include that there were two victims, both of whom were junior in rank, and the offenses occurred during duty hours in the duty station, as well as the appellant's record of service,[2] we do not find the sentence was inappropriately severe. Having examined the entire record of trial, we find the appellant's sentence appropriately reflects the gravity of his misconduct.

---

[2] The appellant's military service record included five letters of reprimand and four letters of counseling for failure to meet fitness standards on four occasions, dereliction of duty, and failure to go to his appointed place of duty on four occasions.

*Conclusion*

The approved findings and sentence are correct in law and fact and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are,

AFFIRMED.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court