# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

### No. ACM 38005 (rem)

———————————

### UNITED STATES OF AMERICA
*Appellee*

v.

### Joshua A. KATSO
Airman Basic (E-1), USAF, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary
*On Remand from*
the United States Court of Appeals for the Armed Forces

Decided 2 February 2017

———————————

*Military Judge:* Matthew D. van Dalen.

*Approved sentence:* Dishonorable discharge, confinement for 10 years, and total forfeiture of pay and allowances. Sentence adjudged 6 May 2011 by GCM convened at Grand Forks Air Force Base, North Dakota.

*For Appellant:* Major Isaac C. Kennen, USAF.

*For Appellee:* Lieutenant Colonel Jennifer A. Porter, USAF; Major Jeremy D. Gehman, USAF; and Gerald R. Bruce, Esquire.

Before DREW, MAYBERRY, and SANTORO, *Appellate Military Judges*.

Judge SANTORO delivered the opinion of the court, in which Senior Judge MAYBERRY joined. Chief Judge DREW delivered a separate *dubitante* opinion.

———————————

**PUBLISHED OPINION OF THE COURT**

———————————

SANTORO, Judge:

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of one specification of aggravated sex-

ual assault, one specification of burglary, and one specification of unlawful entry in violation of Articles 120, 129, and 134, UCMJ, 10 U.S.C. §§ 920, 929, 934. The adjudged and approved sentence was a dishonorable discharge, confinement for 10 years, and forfeiture of all pay and allowances.

Upon initial review, Appellant raised two issues for our consideration: (1) whether his right to confrontation was denied when the military judge overruled a defense objection to the testimony of the Government's DNA expert, and (2) whether the conviction for unlawful entry should be dismissed because the specification failed to allege that his conduct was prejudicial to good order and discipline or service discrediting. We found that the expert improperly repeated testimonial hearsay. We set aside and dismissed the findings of guilt with respect to the specifications alleging aggravated sexual assault and burglary, and authorized a rehearing. We also set aside and dismissed the unlawful entry specification because it failed to state an offense. *United States v. Katso*, 73 M.J. 630 (A.F. Ct. Crim. App. 2014) (*Katso I*).

The Judge Advocate General (TJAG) of the Air Force certified the expert witness issue to our superior court, which reversed our decision and remanded to us for further review. *United States v. Katso*, 74 M.J. 273 (C.A.A.F. 2015) (*Katso II*). TJAG did not certify, nor did our superior court address, our setting aside and dismissing the unlawful entry specification.

On remand, Appellant raises five assignments of error: (1) the military judge erred by allowing an expert to testify about DNA tests the expert had not personally conducted, (2) the unlawful entry specification failed to state an offense and should be dismissed, (3) the burglary and unlawful entry specifications are facially duplicative, (4) he is entitled to relief for procedural errors relating to his confinement pending appeal, and (5) the military judge's instruction on proof beyond a reasonable doubt was erroneous.

## I. BACKGROUND

While celebrating her 21st birthday with several friends, Senior Airman (SrA) CA became intoxicated after consuming between 15 and 20 drinks over the course of the evening. At an off-base bar and unable to return to the base on her own, she was assisted back to her room and fell asleep on her bed. SrA CA testified that she woke up when she felt "someone having sex with [her]." She said she was attacked by a man wearing denim pants, glasses, a beanie cap, and a coat. After SrA CA struggled against him, her assailant left, and SrA CA ran into another room and told a friend she had been raped. SrA CA subsequently identified Appellant as her attacker.

## II. DISCUSSION

### A. Admissibility of Expert Testimony

Appellant raises no new argument nor does he identify any way in which our superior court's decision did not fully address this assignment of error. Our superior court's decision in *Katso II* resolved this issue adversely to him and he is entitled to no relief. *Katso*, 74 M.J. at 284.

### B. Failure to State an Offense

Our prior decision resolved this assignment of error in Appellant's favor and our superior court did not address or overturn our decision on this point. We decline the Government's invitation to revisit *Katso I*'s analysis, and we adhere to the decision setting aside and dismissing this specification.[1]

### C. Sentence Reassessment

Having set aside and dismissed the guilty finding on the unlawful entry charge and specification, we must either reassess Appellant's sentence or remand for a rehearing on sentence. Applying the analysis set forth in *United States v. Winckelmann*, 73 M.J. 11 (C.A.A.F. 2013); *United States v. Buber*, 62 M.J. 476 (C.A.A.F. 2006); *United States v. Moffeit*, 63 M.J. 40 (C.A.A.F. 2006); and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986), and carefully considering the entire record and the totality of the circumstances, we are confident that we can reassess the sentence. There has not been a change in the penalty landscape as the military judge merged this offense with the burglary offense for sentencing. All of the evidence admitted in sentencing remained relevant and admissible. Appellant also does not contest the appropriateness of his sentence. We therefore reassess the sentence to that which was adjudged at trial: a dishonorable discharge, confinement for 10 years, and total forfeiture of pay and allowances.

In reassessing Appellant's sentence, we necessarily have also concluded that the reassessed sentence is appropriate. We assess sentence appropriateness by considering Appellant, the nature and seriousness of the offense, Appellant's record of service, and all matters contained in the record of trial. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982); *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006), *aff'd*, 65 M.J. 35 (C.A.A.F. 2007). The sentence as reassessed is appropriate for this Airman who invaded a fellow Airman's dormitory room and violently sexually assaulted her on an Air Force installation.

---

[1] Our setting aside and dismissing this charge and specification moots Appellant's third assignment of error.

**D. Confinement Pending Appeal**

We rendered our initial decision setting aside the findings on 11 April 2014. On 9 June 2014, TJAG filed a certificate of review with our superior court. On 3 June 2015, Appellant requested review of his continued confinement. On 15 June 2015, while this case was still with our superior court, a properly-appointed reviewing officer determined that Appellant should remain in confinement pending the resolution of his appeal. On 30 June 2015, our superior court reversed our decision, effectively reinstating Appellant's convictions for aggravated sexual assault and burglary.

In *Moore v. Akins*, 30 M.J. 249 (C.M.A. 1990), our superior court faced the exact issue presented in this case: if a service court reverses the conviction of a servicemember in confinement, and the case is certified pursuant to Article 67(b)(2), UCMJ, 10 U.S.C. § 867(b)(2), under what circumstances, if any, is the servicemember entitled to be released from confinement? Noting Congress's desire that "a practical means be made available to release accused servicemembers from confinement pending appeal in meritorious cases," our superior court granted Moore's habeas corpus petition and ordered his release pending completion of appellate review. *Moore*, 30 M.J. at 253. The court held that a servicemember "must be released from confinement, unless and until the Government shows reasons, such as risk of flight, or obstruction of justice, that warrant keeping him in confinement." *Id.* at 249.[2]

Later, in *United States v. Miller*, 47 M.J. 352 (C.A.A.F. 1997), the Court of Appeals for the Armed Forces (CAAF) reaffirmed *Moore*:

> After considering the matter, if the Judge Advocate General decides to certify a case to this Court, an accused's interest in the favorable decision of the court below (even if inchoate) requires either that the accused be released in accordance with that decision or a hearing on continued confinement be conducted under [Rule for Courts-Martial (R.C.M.)] 305.

---

[2] In response, Congress enacted Article 57a(c), UCMJ, 10 U.S.C. § 857a(c), which provides that when a sentence to confinement has been ordered executed by the convening authority but the case is pending review under Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2), "the Secretary concerned may defer further service of sentence to confinement while that review is pending." The grant of this discretionary authority to the Secretary did not abrogate or alter our superior court's holding in *Moore*.

*Miller*, 47 M.J. at 362. The *Miller* rule has never been overturned and it has been cited with approval by the CAAF in *United States v. Kreutzer*, 70 M.J. 444 (C.A.A.F. 2012).[3]

In its attempt to distinguish the instant case from *Miller*, the Government argues: (1) *Miller* does not apply because Appellant never became a pretrial detainee; (2) Appellant suffered no prejudice because when a hearing was ultimately held, the reviewing officer ordered his continued confinement; (3) the fact that his convictions were eventually reinstated excuses the failure to comply with *Miller*; (4) we should infer from our superior court's disposition without opinion of a similar issue raised in another case that Appellant is entitled to no relief; (5) we should infer from our superior court's failure to address this claim (which was brought to them only a few days before they issued *Katso II*) that Appellant is entitled to no relief; and (6) Appellant suffered no prejudice because he will now be released sooner than if he had been released during the pendency of the appeal.

### 1. *Miller*'s Applicability

The Government's initial response is that *Miller* does not apply to Appellant. Citing *Kreutzer*, they argue that Appellant remained a "lawfully confined post-trial prisoner" with an approved sentence to confinement throughout the duration of our superior court's review and that, therefore, *Miller* is inapposite. We disagree.

Kreutzer was convicted of premeditated murder and sentenced to death. The Army Court of Criminal Appeals set aside the sentence to death but affirmed guilty findings with respect to several charges and specifications, including murder while engaged in an inherently dangerous act. Facing nearly the same claim as Appellant makes in the instant case, our superior court in *Kreutzer* held that *Miller*'s requirement did not apply because Kreutzer remained an adjudged prisoner throughout the duration of his appeal. *Id.*

Miller was convicted of pandering, obstruction of justice, showing pornography to minors, battery, attempted indecent assault, and providing alcohol to minors. The adjudged sentence included confinement for 10 years. On ap-

---

[3] When *Miller* was decided, The Judge Advocates General had a 30-day period to decide whether to certify a case to our superior court. *United States v. Miller*, 47 M.J. 352, 361 (C.A.A.F. 1997). Although the 30-day certification decision period has since been expanded to 60 days, we agree with our Navy-Marine Corps colleagues that the *Miller* requirement, i.e., confinement review upon certification, remains in effect. *Clark v. United States*, 74 M.J. 826, 829 fn.2 (N-M. Ct. Crim. App. 2015) (unpub. op.).

peal to this court, we set aside several findings of guilt and affirmed others, but reassessed the sentence to reduce the confinement to four years. Based on the reassessed sentence, officials at the United States Disciplinary Barracks set Miller's minimum release date for the following day—before TJAG decided whether to certify the case for review. *Miller*, 47 M.J. 352.

*Kreutzer* and *Miller* are not inconsistent. In *Kreutzer*, several guilty findings had been affirmed and the appellant was pending a rehearing on sentence[4] (as well as a rehearing on the set-aside findings). In *Miller*, the reassessed sentence meant that Miller had served his entire sentence and was entitled to immediate release from confinement. Therefore, Miller's interest in the favorable service-court decision was clear: if affirmed, he faced no further liability for his offenses.

In the instant case, where our initial decision nullified Appellant's criminal liability, his case is more closely aligned with *Miller* (and *Moore*) in that our decision, if affirmed, would require his immediate release from confinement unless there was a proper determination to hold him for a rehearing. We therefore hold that the Government was obligated to comply with *Miller*.

### 2. *Miller*'s Requirements and Remedies

*Miller* did not, however, specifically identify which of R.C.M. 305's procedures were to be followed. Nor did the CAAF identify the remedy, if any, for non-compliance.

R.C.M. 305 (entitled "Pretrial confinement") establishes both procedural requirements and remedies for non-compliance. Procedurally, the rule requires that within 72 hours of a commander's ordering a prisoner into "pretrial confinement," the commander must determine whether confinement should continue. R.C.M. 305(h)(2)(A). Within 48 hours of entry into confinement, a neutral and detached officer must review the adequacy of the probable cause to continue pretrial confinement. R.C.M. 305(i)(1). Within 7 days of the imposition of confinement, a neutral and detached officer must review both the probable cause determination and the necessity for continued confinement. R.C.M. 305(i)(2). The remedy for failure to comply with these procedural rules "shall be an administrative credit against the sentence adjudged for any confinement served as the result of such noncompliance. Such credit shall be computed at the rate of 1 day credit for each day of confinement served as a result of such noncompliance." R.C.M. 305(k).

---

[4] Our superior court referred to Kreutzer's status as having a "temporarily inchoate sentence" which was ultimately adjudged to include confinement for life.

One could argue that the CAAF's intent in *Miller* was simply to require that a neutral and detached officer hold a hearing to determine whether continued confinement was appropriate and, because no Rule for Courts-Martial set forth such a procedure, the reference to R.C.M. 305 was nothing more than a suggestion about how such a hearing might be conducted. Conversely, one could also argue that *Miller* requires the Government to comply with all of R.C.M. 305's procedural protections and that failure to do so will trigger R.C.M. 305(k)'s one-for-one credit requirement.

We must first therefore resolve the question of what process *Miller* requires before we can determine whether Appellant received the process due and, if not, the scope of any remedy. This appears to be a case of first impression.

We easily conclude that *Miller* did not contemplate that R.C.M. 305 would be followed in its entirety. First, *Miller* said that the detainee would be entitled to "*a* hearing" conducted under R.C.M. 305 (emphasis added). Had our superior court intended that Appellant receive a 72-hour review, a 48-hour review, and a 7-day review, we doubt they would have referred to a singular hearing, especially since R.C.M. 305 does not refer to a "hearing." *See* R.C.M. 305.

Second, two of the three findings a reviewing officer must make to justify continued confinement under R.C.M. 305 are that an offense triable by court-martial was committed and that the prisoner committed it. R.C.M. 305 (h)(2)(B). In *Katso I*, although we set aside the findings, we authorized a rehearing. We necessarily implicitly determined that notwithstanding our decision, probable cause existed to believe Appellant committed an offense triable by court-martial.[5] We doubt that our superior court intended to give a reviewing officer the authority to overturn that decision.

We therefore conclude that the review *Miller* requires is one to determine "continued confinement"—that is, whether confinement on appeal is necessary because it is foreseeable that the prisoner will not appear at trial (or pretrial hearings) or that the prisoner will engage in serious criminal misconduct and, if either of those two conditions is met, that less severe forms of restraint are inadequate. *See* R.C.M. 305(h)(2)(B). This is also consistent with *Moore's* holding that a detainee in such a situation must be released unless the Government establishes "reasons . . . that warrant keeping him in confinement," *Moore*, 30 M.J. at 249, without making reference to the need to

---

[5] *See* Rule for Courts-Martial (R.C.M.) 601(d)(1).

establish probable cause that the detainee committed an offense triable by court-martial.

Next we must determine when the *Miller* review is to occur. The CAAF established the initial trigger: the date on which TJAG certifies a service court decision is the date on which an appellant obtains an interest in the favorable lower-court decision requiring either release or a hearing. *Miller*, 47 M.J. at 362. We also know that the President determined 7 days from imposition of confinement is the outer limit by which confinement review must occur. We are, therefore, left with two possible windows: within 48 hours of certification[6] or 7 days of certification.[7] We believe that in the context of a *Miller* review, 7 days is the appropriate window during which the hearing must be held.

The Government does not dispute that Appellant's *Miller* review was not conducted until 15 June 2015, 372 days after TJAG certified this case to our superior court. Appellant requests that we grant 365 days of credit for illegal confinement or alternatively use our Article 66(c), UCMJ, authority to reduce the period of confinement by the same period.[8]

As noted above, *Miller* does not explicitly set forth the remedy for non-compliance. We reject any argument that there can be no remedy for a *Miller* violation, for "[i]t is a settled and invariable principle, that every right, when withheld, must have a remedy, and every injury its proper redress." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 153 (1803).

Because *Miller* could not have intended for each aspect of R.C.M. 305 to control the continued confinement review, we are also not convinced that R.C.M. 305(k) must be the source of the remedy. We do believe, however, that the President's determination that confinement without following established procedural protections merits day-for-day administrative credit applies

---

[6] *See Gerstein v. Pugh*, 420 U.S. 103 (1975) (holding that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest); *see also Cnty. of Riverside v McLaughlin*, 500 U.S. 44 (1991) (vacating court of appeals' judgment and concluding county was entitled to combine probable cause determinations with arraignments if conducted within 48 hour of an individual's arrest).

[7] R.C.M. 305(i)(2).

[8] Although not explicitly stated, Appellant's request for 365 days of credit suggests that he, too, does not believe that all of R.C.M. 305's procedural requirements apply to *Miller* reviews and that non-compliance began after 7 days without a *Miller* review.

equally to *Miller* violations as it does to pre-trial confinement review violations.[9]

Therefore, we hold that the remedy for the Government's failure to provide a *Miller* review within seven days of certification is day-for-day administrative credit (beginning on the eighth day) against the sentence as finally affirmed, and if the affirmed sentence does not include confinement sufficient to offset all the credit to which the appellant is entitled, the credit shall be applied against hard labor without confinement, restriction, fine, and forfeiture of pay, in that order, using the conversion formula under R.C.M. 1003(b)(6) and (7). The credit shall not be applied against any other form of punishment.[10]

While we understand the Chief Judge's *dubitante* opinion and belief that R.C.M. 305 does not apply to this case, as an inferior court we are not at liberty to craft a rule contrary to that clearly articulated by our superior court. Were we writing on a blank slate we may well have reached a different result. But we are not. We are bound to follow and apply precedent as we understand it. We cannot ignore or fail to implement our superior court's declaration that R.C.M. 305 *does* apply to Appellant, at least in some respect. Our decision today attempts to reconcile *Miller*, the interests the *Miller* rule appears designed to protect, and the Rules for Courts-Martial.

The Government's remaining arguments merit little discussion. There is no requirement that a detainee complain about the propriety of confinement, exhaust administrative remedies, or establish prejudice before R.C.M. 305(k) credit is due and we do not believe a different rule was intended to apply to *Miller* reviews. While not stated explicitly in the Rule, the reason Appellant need not raise those issues is likely because the President, in promulgating the Rules, recognized that incarceration without due process is inherently prejudicial.[11]

---

[9] The Chief Judge's *dubitante* opinion suggests that the remedy for a *Miller* review violation should be based on equity rather than the day-for-day credit set forth in R.C.M. 305(k). As neither he nor the CAAF have set forth the criteria we could or should use in such a situation, we believe we are bound to follow the policy determination contained within the Rules for Courts-Martial for the remedy for the failure to receive a confinement review hearing. R.C.M. 305(k).

[10] *See* R.C.M. 305(k).

[11] We summarily reject the Government's remaining three arguments. That Appellant will ultimately be released sooner than had he been released pending appeal does not change the fact that his right to *Miller's* procedural protections does not depend upon the outcome of the appeal. Our superior court's denial (without opinion) of

*(Footnote continues on next page)*

We therefore grant Appellant the relief to which he is entitled: he shall be credited with 365 days of administrative credit against the reassessed sentence to confinement.

## E. Findings Instruction

Appellant asserts for the first time on remand that the military judge's instruction on the burden of proof beyond a reasonable doubt was error.[12] The military judge instructed the members that if, based on their consideration of the evidence, they were firmly convinced of Appellant's guilt, that they *must* find him guilty. Appellant did not object to the instruction at trial but now argues that it violates Supreme Court precedent prohibiting a trial judge from "directing the jury to come forward with [a guilty verdict], regardless of how overwhelmingly the evidence may point in that direction." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572–73 (1977) (citation omitted). However, the CAAF recently rejected this argument under these circumstances. *See United States v. McClour*, No. 16-0455 (C.A.A.F. 24 January 2017). Accordingly, the military judge did not commit plain error in his reasonable doubt instruction.

### III. CONCLUSION

The findings of guilt as to Charges I and II and their specifications are **AFFIRMED**. The findings of guilt as to Charge III and its specification are set aside and the charge and specification are **DISMISSED WITH PREJUDICE**. The sentence, as reassessed, is **AFFIRMED**. Appellant shall be credited with 365 days of administrative credit against his sentence to confinement.

---

a writ of habeas corpus in an unrelated case is irrelevant to the outcome of this case. *See Fetrow v. Cotton*, 75 M.J. 405 (C.A.A.F. 2016). Similarly, we do not accept the Government's invitation not to grant Appellant the relief to which he is entitled because our superior court remanded the case without addressing the confinement issue.

[12] The Government does not challenge our consideration of this issue despite its not being raised during the initial submission of errors.

DREW, Chief Judge (*dubitante*):

I fully concur and join with the majority's resolution of the expert testimony, failure to state an offense, sentence reassessment, and findings instruction issues. However, while I applaud the majority's attempt to reconcile the rule announced by the Court of Appeals for the Armed Forces (CAAF) in *United States v. Miller*, 47 M.J. 352 (C.A.A.F. 1997) and derived from *Moore v. Akins*, 30 M.J. 249 (C.M.A. 1990), with Rule for Courts-Martial (R.C.M.) 305, which *Miller* seeks to implement, I am doubtful that R.C.M. 305 has any application to the facts in this case.

The Constitution vests Congress with the power to "make Rules for the Government and Regulation of the land and naval Forces." U.S. CONST. art. I, § 8, cl. 14. Congress delegated to the President, as Commander in Chief of the Armed Forces, the authority to prescribe the Rules for Courts-Martial in Article 36, UCMJ. The President has exercised his delegated authority in R.C.M. 305, in which he authorized pretrial confinement, established the proper procedures to follow to order and review such confinement, and detailed the remedy for noncompliance with those procedures.

R.C.M. 305, by its very terms, applies to *pretrial* confinement. That is not to say that such confinement can never arise as a result of the post-trial review process. A confined appellant, having received a favorable *final* appellate decision that set aside his sentence to confinement (alone or along with setting aside one or more findings) and authorized a rehearing, could most certainly fall within the ambit of R.C.M. 305. If the convening authority desires to keep an appellant in confinement until a new trial, the appellant would become a pretrial confinee and the requirements of R.C.M. 305 would apply. However, before an appellate decision has become final, the confinee remains an adjudged and sentenced prisoner and not a pretrial confinee. *See United States v. Kreutzer*, 70 M.J. 444, 451 (C.A.A.F. 2012) (Erdmann, J., dissenting). R.C.M. 305 simply does not apply while an appellate decision setting aside a sentence to confinement remains inchoate.

As the majority notes above, Congress, in response to *Moore*, enacted Article 57a(c):

> In any case in which a court-martial sentences a person to confinement and the sentence to confinement has been ordered executed, but in which review of the case under section 867(a)(2) of this title (article 67(a)(2)) is pending, the Secretary concerned *may* defer further service of sentence to confinement while that review is pending.

Article 57a(c), UCMJ (emphasis added).

Even though Congress gave the Executive Branch in Article 57a(c) the *authority to defer* further military confinement pending appeal—something the Government had argued in *Moore* that the UCMJ did not previously provide—Congress declined to establish a requirement that the Government *must defer* further confinement or *must conduct a review* to justify further confinement. In particular, Congress chose not to amend the UCMJ to adopt a procedure similar to 18 U.S.C. § 3143,[1] which was cited favorably in *Moore. See Moore*, 30 M.J. at 251. The President, for his part, has not, before, between, or since the *Miller* and *Moore* decisions, exercised his statutory authority to promulgate an R.C.M. or other rule requiring a review of continued confinement during appeal.

In neither *Moore* nor *Miller* did the CAAF base its holdings on constitutional grounds. Rather, in *Moore*, it premised its decision on Article 57(d) (now Article 57a(a)), which applies only to unexecuted sentences. As Appellant's sentence in this case was ordered executed long before we issued our earlier inchoate decision setting aside his findings, Article 57a(a) provides no basis for his requested relief. In *Miller*, the CAAF premised its decision on Article 66(e), 10 U.S.C. § 866(e), which does not require the Government to implement a Court of Criminal Appeals (CCA) decision which is pending further review by the CAAF. On the contrary, the CAAF recognized that Article 66(e) specifically excludes it:

> The Judge Advocate General shall, *unless there is to be further action by* the President, the Secretary concerned, *the Court of Appeals for the Armed Forces*, or the Supreme Court, instruct the convening authority to take action in accordance with the decision of the Court of Criminal Appeals.

*Miller*, 47 M.J. 361 (quoting 10 U.S.C. § 866(e)) (emphasis added). In *Miller*, the CAAF recognized Article 66(e) in holding:

> If the Judge Advocate General immediately decides not to pursue a case any further, there must be immediate notice to the convening authority of the opinion of the Court of Criminal Appeals and immediate direction to release an accused or conduct a hearing under RCM 305, Manual, *supra*, on pretrial confinement.

47 M.J. at 361.

---

[1] The requirement to conduct the review is found in 18 U.S.C. § 3141.

Again acknowledging Article 66(e), the CAAF next held:

> If there is not such an immediate decision, there will be a 30-day period during which the Judge Advocate General is considering whether to accept the lower court's opinion or to pursue it further by way of a motion for reconsideration or certification to this Court. During such period, an accused remains in confinement because the opinion below is inchoate.

47 M.J. at 361. However, without citing Article 66(e) or any other Article, the CAAF finally articulated the rule in question in this case:

> After considering the matter, if the Judge Advocate General decides to certify a case to [the CAAF], an accused's interest in the favorable decision of the court below (even if inchoate) requires that the accused be released in accordance with that decision or a hearing on continued confinement be conducted under RCM 305.

47 M.J. at 362.

*Miller* does not explain how an appellant's interest in a favorable inchoate decision is any greater (or "sufficiently weighty" as stated in *Kreutzer*, 70 M.J. at 446) once The Judge Advocate General (TJAG) has certified a CCA decision to the CAAF. An inchoate decision remains inchoate until it is final, withdrawn, or set aside. A decision by TJAG to certify a CCA decision to the CAAF does not make the CCA decision any less inchoate. Indeed, the exercise of TJAG's statutory authority extends the incomplete nature of the CCA decision rather than ripening it to any degree. It is beyond dispute that an appellant has a profound interest in a favorable CCA decision, but that interest is no more or less weighty once TJAG has certified it to the CAAF. Contrast this to an affirmative decision of TJAG *not* to certify a CCA decision, or to the expiration of the time to seek reconsideration from the CCA and certification to the CAAF. In those circumstances, Article 66(e) would make the CCA decision final and no longer inchoate and require the Government to implement it, to include complying with R.C.M. 305 if it desires to place an appellant in pretrial confinement pending a rehearing.

Application of the *Miller* rule in this case results in an inappropriate windfall for Appellant. Unlike the confinees in *Moore* and *Miller*, Appellant waited nearly a year from TJAG's 9 June 2014 certification to raise the issue of his continued confinement. He did so on 3 June 2015. Three days later, the convening authority directed a hearing to consider the matter and that hearing was held on 15 June, during which the hearing officer determined that Appellant should remain in confinement. On 30 June, the CAAF reversed our prior decision, reinstating Appellant's convictions for sexual assault and bur-

glary. The record does not reflect why the Government did not, on its own initiative, hold a *Miller* hearing shortly after TJAG's certification. However, unlike the confinee in *Kreutzer,* who remained on death row after the CCA set aside his death sentence until the CAAF issued a writ of mandamus, the conditions of Appellant's confinement since his trial have at all times been proper for adjudged and sentenced prisoner with the type of sentence that our decision today finds appropriate. We have found no prejudice Appellant has suffered for the procedural timing failure to follow the *Miller* rule. *Miller* required a review of Appellant's continued confinement. That review determined that continued confinement was appropriate. Because that review was held shortly after Appellant requested it but a year after TJAG certified his case, the majority opinion provides an R.C.M. 305(k)-like automatic day-for-day administrative credit, granting Appellant 365 days administrative credit. I doubt that R.C.M. 305 or Article 66(e) demands such a result.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court